**UNITED STATES, for Use of WYLIE et al. v. W. S. BARSTOW & CO., Inc., et al.**

**No. 3855.**

Circuit Court of Appeals, Fourth Circuit.
Oct. 8, 1935.

Douglas McKay, of Columbia, S. C. (John E. Edens, E. J. Best, and A. W. Holman, all of Columbia, S. C., on the brief), for appellant.

W. C. McLain, of Columbia, S. C., and Gerald J. Dean, of New York City (Elliott, McLain, Wardlaw & Elliott, of Columbia, S. C., and Jesse J. Holland, of New York City, on the brief), for appellees.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

This suit under the Heard Act, as amended, 40 USCA § 270, was brought by J. H. Wylie, plaintiff in the District Court, on behalf of himself and all other laborers who furnished labor to W. S. Barstow & Co., Inc., defendant, a contractor who built the Veterans' Administration Hospital at Columbia, S. C., under a contract with the United States. The purpose of the suit was to recover from the contractor, for the period prior to April 1, 1932, the difference between the wages paid and the higher prevailing rate of wages for work of a similar nature in the same city as determined by the Secretary of Labor. The period of the plaintiff's employment began on March 2 or 3, 1932, and ended on May 3, 1932; but it also appears in the findings of the District Court that a number of other laborers

had intervened as parties plaintiff, and it may be that the latter were at work under the contract at an earlier date. While the record does not show the period of their employment, the case has been treated by counsel as a test case involving the prior period as well as the period subsequent to March 3, 1932, and will be so considered by this court.

The contract was executed on November 14, 1931, and the work of construction seems to have been begun in November or December, 1931. Pursuant to the Act of Congress of March 3, 1931, 40 USCA § 276a, the contract contained in the words of the act a provision that the contractor was bound to pay not less than "the prevailing rate of wages for work of a similar nature in the city, town, village, or other civil division of the State in which the public buildings are located, * * *" and a further provision that "in case any dispute arises as to what are the prevailing rates of wages for work of a similar nature applicable to the contract which cannot be adjusted by the contracting officer, the matter shall be referred to the Secretary of Labor for determination and his decision thereon shall be conclusive on all parties to the contract."

After the work began, a dispute arose as to what were the prevailing rates of wages, and efforts were made by the Construction Service of the Veterans' Administration to adjust the controversy. An investigation was made in Columbia to discover the prevailing rates, which was conducted by the Veterans' Administration, through one of its representatives and a representative of the Secretary of Labor, and a tabulation was made of the rates paid to the greatest number of men in each trade and work of a similar nature in the community. The contractor was willing to abide by the conclusions announced by the Veterans' Administration, but the laborers protested and called upon the Secretary of Labor to exercise his power of determination under the act. On March 3, 1932, the Secretary of Labor, in a letter to the Veterans' Administration, stated that he had considered the facts developed by the investigation of the Veterans' Administration, and also facts found by his own representative, and announced his decision fixing rates in excess of those ascertained by the Veterans' Administration; and requested that the contractor be notified immediately to put these new rates into effect.

The Veterans' Administration, by letter of March 10, 1932, requested the Secretary to reconsider his determination in the light of the facts it had discovered in its investigation, but in a letter of March 23, 1932, the Secretary reaffirmed his previous decision, stating that investigation by the Department confirmed the facts found in its earlier inquiry upon which the wage rates were established. He again requested the Veterans' Administration that the contractor be notified immediately to pay the rates announced. On March 29, 1932, the Veterans' Administration notified the contractor of the Secretary's decision, and directed that the new rates be put into effect at once. This letter was received by the contractor on March 30, and the new rates were put in effect by it on April 1. The result was that the plaintiff, Wiley, was paid 65 cents per hour for his work as a bricklayer during the period from March 3 to March 31, and $1 per hour from April 1 to May 3, 1932.

The point was raised in the month of April that the decision of the Secretary should be given a retroactive effect, with the result, for example, that the plaintiff would have been entitled to receive the additional sum of 35 cents per hour for the period before April 1. The question was referred to the Secretary, and in a letter of April 27, 1932, to the Veterans' Bureau, he ruled that since his decision was received by the contractor on March 30, 1932, it became effective from and after that date. In accordance with these instructions, the contractor put the new rates into effect on April 1, 1932.

The present suit, challenging the correctness of this ruling, was brought on June 1, 1933, more than a year later. Upon the facts disclosed, the district judge rendered a judgment for the contractor, holding that the Secretary had the power and authority under the act to make a conclusive finding as to the matters in dispute, and to decide not only the amount of wages to be paid, but also to fix the period to which the rate should be applied. With the principle of this decision we are in accord. The Act of March 3, 1931, 40 USCA, § 276a, expressly provides that when a dispute arises as to the prevailing rate of wages, the matter shall be referred to the Secretary and "his decision thereon shall be conclusive on all parties to the contract." This enactment simply states the rule established by the courts "that where the decision of questions of fact is committed by Congress to the

judgment and discretion of the head of a department, his decision thereon is conclusive," Bates & Guild v. Payne, 194 U. S. 106, 109, 24 S. Ct. 595, 597, 48 L. Ed. 894; and the courts have no power to interfere unless there has been a denial of a fair hearing, or the finding is not supported by any substantial evidence or an erroneous ruling of law has been made. Lindsey v. Dobra (C. C. A.) 62 F.(2d) 116. There is no contention that the Secretary acted arbitrarily in the pending case or without a substantial basis for his findings, and it follows that his determination as to the rate of wages to be applied must be accepted.

■ It is also clear that the power to fix the rates, in case a dispute arises, includes the power to determine the period during which they have been prevalent in the place in which the public work is being done. Otherwise, it would not be possible for the Secretary to adjust his findings to the fluctuations of wage scales and properly perform his duties in accordance with the spirit of the act in justice to all parties concerned. However, we do not think that the Secretary has the power, when he has once found that the rates prevailing at a particular point of time differ from the rates then being paid by the contractor, to postpone or defer the time when his findings shall become effective. The contractor, in accordance with the act, agrees to pay the prevailing rate of wages, that is to say, the rate prevailing while the public work is being done; and no discretion is conferred upon the Secretary to modify or change the effect of this agreement. Indeed, he has no part in the matter unless a "dispute arises as to what are the prevailing rates," and then his function is limited to a determination of the issue.

■ The evidence in the pending case clearly shows that on March 3, 1932, the Secretary of Labor determined the rates then prevailing, finding inter alia that bricklayers were being paid $1 per hour. On March 23, 1932, he affirmed this decision in every respect. By this ruling, the rights and liabilities of the parties were fixed, in accordance with the provisions of the act of Congress, and since it was found that the wages paid were less than required by the contract and the act, the right of the laborers to receive the deficiency from the contractor was legally established. The Secretary of Labor had no discretionary power to destroy this right or to diminish it in any way, and his subsequent ruling that the new rate should not be paid until March 30 must be disregarded as ineffectual. Our attention is called to the authorities which require the courts in construing an ambiguous statute to ascribe great if not controlling weight to the interpretation of the officials charged with its enforcement or administration. United States v. Jackson, 280 U. S. 183, 50 S. Ct. 143, 74 L. Ed. 361. But we do not regard the statute as ambiguous, nor do we think that the single attempt on the part of the Secretary to exercise the power in this case, soon after the act was passed, constitutes that settled administrative construction of the statute which should control the court in a doubtful case.

[6] It is further contended on behalf of the wage earners that the contractor should also be required to make good the deficiency in wages for the period between the origin of the dispute and the decision of the Secretary on March 3, 1932. We should have regarded this point as well taken if it had appeared that the Secretary's decision covered this earlier period. But it does not so appear in the record before us. He made no ruling with respect thereto, deciding simply the rate prevailing on that date. It is urged upon us that wages were probably no higher in March, 1932, as the worldwide depression progressed, than they were in the preceding January and February. Such perhaps may have been the fact, but it is not within our province to decide the point. Congress has decreed that the Secretary of Labor shall decide such disputes, and he has made no determination for this period. We are not at liberty to assume, without evidence, that the contractor failed to abide by the terms of his contract; but even if we should do so, we should still be without liberty to exercise the power given by Congress only to the Executive Department.

It follows that the plaintiff was entitled to a judgment in the court below for the amount of the deficiency in his wages from March 3, 1932, to the end of the period of his employment. The judgment of the District Court dismissing the complaint must therefore be reversed and the case remanded for a new trial.

Reversed and remanded.