KANSAS CITY, MEXICO & ORIENT RAILWAY COMPANY OF TEXAS V. CITY OF SWEETWATER.

No. 2212.   Decided May 31, 1911.

**1.—Railway—City—Use of Streets—Contract—Ultra Vires—Location of Machine Shops and Offices.**

A city having the right to consent to or refuse the privilege of occupying its streets by the tracks of a railway company (Rev. Stats., arts. 4426, 4438) is empowered by article 4367, Revised Statutes, to contract with such company, as a condition of the grant of such right, for the location and maintainance of the general offices and machine shops of the company in such city. Galveston & W. Ry. Co. v. City of Galveston, 90 Texas, 398, distinguished.   (Pp. 333-335.)

**2.—Same—Sufficiency of Evidence.**

Proof showing negotiations between a railway company and a city leading to a grant by the latter of the right to lay the tracks of the railway in the streets, considered and held to furnish such evidence of the making of a contract by the company, in consideration of such privilege, to maintain its general offices and machine shops in the city, that the Supreme Court could not reject a finding that such contract was made as being wholly unsupported.   (Pp. 335, 336.)

**3.—Corporation—Officers—Directors—Contract.**

The powers of a corporation are vested in its board of directors, and an officer (vice-president) had no authority to bind the corporation by contract except as same was conferred on him by the directors.   (Pp. 336, 337.)

**4.—Same—Ratification.**

An officer having no authority to bind a corporation by contract can not ratify a contract so made by him by accepting, approving, and acting upon it. (P. 337.)

**5.—Ratification—Acceptance of City Ordinance.**

By accepting and acting upon a city ordinance giving it a right to lay its tracks in the streets, a railway company did not ratify an unauthorized contract by its vice-president to maintain its offices and shops in the city, though made in consideration of such grant by the city, where such condition of the grant was not expressed in the ordinance nor known to the officers whose acts were relied on for ratification.   (P. 337.)

Error to the Court of Civil Appeals, Second District, in an appeal from Scurry County.

The city of Sweetwater sued the railway company and had judgment

which was affirmed on defendant's appeal. Appellant thereupon obtained writ of error.

*H. C. Hord, Hill & Lee, John A. Eaton, Smith, Hutchison & Taylor* and *J McD. Trimble,* for plaintiff in error.—The city of Sweetwater had no power to make a contract with the railway company to locate and maintain its general offices, machine shops, and roundhouse, or either of them at Sweetwater, and the Court of Civil Appeals erred in holding "that the city of Sweetwater, as a municipal corporation, was capable of entering into the contract" sued on, and in overruling the assignments of error based thereon. Revised Civil Statutes, chs. 1 and 4, title 18 and arts. 4426 and 4438; Art. 1, sec. 3, Constitution of Texas; Galveston & W. Ry. Co. v. City of Galveston, 90 Texas, 407; City of Cleburne v. Gulf, C. & S. F. Ry. Co., 66 Texas, 467; City of Cleburne v. Brown, 73 Texas, 446; Edwards County v. Jennings, 33 S. W., 585; Covington & M. R. Ry. Co. v. Mayor, etc., of Athens, 11 S. E., 663; Joplin v. Lechie, 78 Mo. App., 888; 20 Am. & Eng. Ency. of Law, pp. 1139-1140, and authorities cited; McQuillan on Municipal Ordinances, sec. 39, p. 54; People v. Mutual Gas Light Co., Detroit, 38 Mich., 145; Forty Fort v. Forty Fort Water Co., 9 Kulp (Pa.), 241; Cent. Trans. Co. v. Pullman Car Co., 139 U. S., 54; Reese, Ultra Vires, sec. 60, pp. 85, 86, sec. 188, pp. 251, 252, secs. 69, 70, 72, pp. 100, 106, sec. 78, pp. 121, 122; City of New Haven v. New Haven & D. Ry. Co., 18 L. R. A., 256.

It was shown that McCaulley had any authority to represent or bind the railway company in the making of any such promises, if in fact he did make them and the court of Civil Appeals erred in holding that there was sufficient evidence of the authority of McCaulley to make the representations and agreements constituting the railway company's part of the contract sued on herein. Revised Civil Statutes, arts. 4386, 4387, 4391 and 4393; Missouri, K. & T. Ry. Co. v. Faulkner, 88 Texas, 651; Wood on Railway Law, 436 Chicago, R. I. & P. Ry. Co. v. Union Pacific Ry. Co., 47 Fed., 15; Temple v. Dodge, 89 Texas, 68; Fitzhugh v. Franco-Texan Land Co., 81 Texas, 306; Thompson on Corporations, secs. 4627, 4632 and 4647; Cook, Stockholders and Corporation Law, sec. 716; 10 Cyc., 903; Morawetz on Private Corporations, sec. 537; 1 Elliott on Railroads, sec. 283; Luse v. Isthmus Transit Ry. Co., 6 Ore., 125, 25 Am. Rep., 506.

The acceptance of the ordinance by the railway company did not work a ratification of McCaulley's alleged promises irrespective of the question as to whether the railway company had any knowledge or information that McCaulley made any such promises. 31 Cyc., pp. 1253 to 1267; Clement v. Young-McShea Amusement Co., 70 N. J. E., 677; Ethridge v. Price, 75 Texas, 597; Sterling v. DeLanse, 105 S. W., 1173; Bank v. Jones, 18 Texas, 824.

The Court of Civil Appeals erred in holding that the evidence was sufficient to prove a contract between the railway company and the city for the location and maintenance of the general offices, machine shops and roundhouse at Sweetwater, in consideration of the passage of the ordinance of May 20, 1903,

*A. H. Kirby, Crane & Bondies, Beall & Beall, W. W. Hamilton, A. C. Wilmeth, C. P. Woodruff* and *Johnson & Edwards,* for defendant in error.—The Statutes of Texas recognize and enforce agreements by railway companies, for valuable considerations, to locate and keep their general offices, machine shops and roundhouses at particular places on their lines in this State, and contemplate that such contracts may be made with municipalities. The incorporated city of Sweetwater had absolute power either to permit or prevent the building of a railroad upon its streets, according to the discretion of its city council. It was a valid exercise of the city's power and discretion, to permit, by unconditional ordinance, the building of a railroad upon its streets by plaintiff in error because of and as the consideration for the company's agreement to locate and keep its general offices, machine shop and roundhouse at Sweetwater; and the granting of this license by the city was valuable and sufficient consideration for that agreement. Sayles' Civ. Stats., arts. 4367, 4426, 4438; City of Tyler v. Railway Co., 99 Texas, 499-501; Railway Co. v. Galveston, 90 Texas, 404, 407, 410; Same case, 91 Texas, 17; Indianola v. Railway Co., 56 Texas, 594; Railway Co. v. Railway Co., 63 Texas, 531; Railway Co. v. Leavenworth, 1 Dillon C. C., 393; Laredo v. Bridge Co., 66 Fed., 246; Railway Co. v. Savannah, 30 Fed., 646; 28 Cyc., pp. 634 et seq.

Plaintiff in error, having made the contract in question with Sweetwater and received the full consideration therefor, which it still retains and enjoys, will not be permitted to avoid its contract by showing that the same, on the part of the city, was ultra vires. Indianola v. Railway Co., 56 Texas, 602; Railway Co. v. Robards, 60 Texas, 552; Scheussler v. Mason, 28 S. W., 42, 43; Sedgwick on Stat. & Const. Law, p. 90; Middleton v. State, 120 Ind., 166; Mayor, etc., v. Harrison, 30 N. J. L., 73; Buffalo v. Balcomb, 134 N. Y., 532; Hendersonville v. Price, 96 N. C., 423; Monticello v. Cohn, 48 Ark., 254; St. Louis v. Davidson, 102 Mo., 149; Bristol v. Waterworks, 19 R. I., 413.

The whole evidence warranted the conclusion or inference that R. L. McCaulley, first vice-president, the highest resident official and chief executive officer of plaintiff in error, was empowered or had been authorized to agree, for valuable consideration by the company received, that its general offices, machine shops and roundhouse would be maintained at Sweetwater; and there was no error in admitting proof that, for and in behalf of the railway company, he made this agreement with the city in consideration of the valuable privilege thus secured unto the company. City of Tyler v. Railway Co., 99 Texas, 496-497; Railway Co. v. Jones, 82 Texas, 156, 165; Railway Co. v. Robards, 60 Texas, 545, 549; Railway Co. v. Doss, 36 S. W., 497; Collins v. Cooper, 65 Texas, 461; Railway Co. v. Simons, 6 Texas Civ. App., 621; Railway Co. v. Pittman, 4 Texas Civ. App., 167; Bank v. Bank, 101 U. S., 181; Martin v. Webb, 110 U. S., 7; Railway v. Bridge Co., 131 U. S., 371; Construction Co. v. Fitzgerald, 137 U. S., 98; Insurance Co. v. Insurance Co., 19 How., 318; Mining Co. v. Bank, 95 Fed., 23; Railway Co. v. Railway Co., 47 Fed., 15; Land Co. v. Wallace (Ky.), 55 S. W., 885; Fowlds v. Evans (Minn.), 54 N. W., 743; Moyer v. Terminal Co., 41 S. C., 300; Streeten v. Robinson (Cal.), 36 Pac., 946; Bay City Co. v. Sweeney, 81 S. W. Rep., 545, 548; Hamm v. Drew, 83

Texas, 77; Dallas Ice Co. v. Crawford, 18 Texas Civ. App., 176; Greenwood v. Pierce, 58 Texas, 130; Sparks v. Transfer Co. (Mo.), 15 S. W., 419; Railway Co. v. Kirkpatrick (Kan.), 34 Pac., 400; Howe v. Harding, 76 Texas, 17; Henderson v. Railway Co., 17 Texas, 561; 4 Thomp. on Corp. (1st ed.), secs. 4611 et seq, 4617 et seq, 4687 et seq, 4876 et seq; Thomp. on Corp. (2d ed.), chap. 53; 10 Cyc., pp. 903, 922, 924; 2 Beach on Mod. Law of Cont., sec. 1008; Jones on Chat. Mort. (4th ed.), sec. 51.

Pretermitting the question of authority to bind the railway company, the testimony fully warrants the conclusion that R. L. McCaulley, acting for plaintiff in error, contracted with the city of Sweetwater, through its city council, that the general offices, machine shops and roundhouse of the company would be maintained in that town, for the valuable consideration granted unto the company by the ordinance in evidence. Greenwood v. Pierce, 58 Texas, 130; Railway Co. v. Schawe, 55 S. W. Rep., 357; Life Ins. Co. v. Thomas, 104 S. W. Rep., 1074; 9 Cyc., pp. 245 to 252. "In the ascertainment of the meaning of the terms used, the situation of the parties and of the subject matter at the time and the acts and declarations of the parties may be looked to; it is not necessary that the words to be interpreted shall be themselves ambiguous, and a party will be held to that meaning which he knew the other party to the contract supposed the words to bear." Oil Co. v. Light Co., 93 S. W. Rep., 173, 176; 2 Parsons on Cont. (8th ed.), pp. 491, 617, 658.

The evidence fully warrants the conclusion that the railway company accepted and utilized the benefit derived through said contract with the city, and has enjoyed the same ever since, charged with knowledge of the agreement by which this benefit was obtained; and the finding by the Court of Civil Appeals that plaintiff in error had approved and ratified said contract is fully sustained by the evidence. Tyler v. Railway Co., 99 Texas, 496-497; Railway Co. v. Robards, 60 Texas, 545, 549; 31 Cyc., pp. 1257, 1258, and cases cited; Henderson v. Railway Co., 17 Texas, 561; Lee v. Kirby, 97 S. W., 298; Collins v. Cooper, 65 Texas, 461; Smith v. Bank, 32 Vt., 341; Bank v. Campbell, 4 Humph. (Tenn.), 394; Fowler v. Jones, 7 Mart. (La.), 140; Byrne v. Doughty, 13 Ga., 46; Szymanski v. Plassan, 20 La. Ann., 90; Coykendall v. Constable, 99 N. Y., 309; Railway Co. v. Bridge Co., 131 U. S., 371; Bank v. Bank, 11 Otto, 181; Marshall County v. Schenek, 5 Wall., 772; Bank v. Wheeler, 74 Ill. App., 261.

Mr. Chief Justice Brown delivered the opinion of the court.

In the year 1897 the Colorado Valley Railway Company was organized for the purpose of constructing and operating a railroad from Colorado City to San Angelo, which company contracted in writing with the citizens of Sweetwater to build its road from the latter place to San Angelo, and to maintain its general offices and machines shops at Sweetwater. The terms of the contract will not be given as it is not necessary to the determination of any issue in the case.

In 1899 the said railroad company, being largely indebted upon bonds executed and other debts, was by the District Court of Nolan County placed in the hands of a receiver, and after proper proceedings had in the court, the road, with all its belongings, was sold by the

receiver appointed by the court.   There were debts against the company which had a lien superior to that of the mortgage bonds and the bondholders entered into an agreement under which they purchased the property at the receiver's sale, acting through trustees appointed for that purpose, and in pursuance of that agreement the trustees did purchase the property at the sale made by the receiver.   The terms of the agreement between the bondholders, as to the manner of reorganizing the company and prosecuting it thereafter, are at present unimportant.

To carry out the purposes of the purchase, the Kansas City, Mexico & Orient Railway Company was organized, and acquired the property and rights of the preceding corporation, and thereafter, by amendment of its charter, its name was changed to the Kansas City, Mexico & Orient Railway Company of Texas.   But the details of these transactions do not affect the questions of law which it is necessary for us to decide.   They will be recited in so far as may be necessary to the decision of any question hereafter arising.   The charter of the last named company contained this recital:

"The charter of this company, filed July 20, 1899, established its general offices at Sweetwater and recited that the company was 'formed for the purpose of acquiring, owning and maintaining all the property of the Colorado Valley Railway Company, including all of its right of way, constructed main line, and partly constructed roadbed, and the appurtenances thereto, as the same has been acquired, owned and constructed by the Colorado Valley Railway Company under authority of its charter and the amendment thereto,' and for the purpose of constructing and operating a railway over the route and between the termini designated in the amended charter of the first company."

By consent of the city of Sweetwater the railway company constructed its tracks over certain streets of said city, which consent the city claims was given as a consideration of a contract by which the company bound itself to permanently establish and maintain its general offices, roundhouses and machine shops, etc., at the said city. Alleging that the company was about to remove its offices, machine shops and the like, from the city of Sweetwater, this suit was instituted to prevent such removal and to that end sought and secured a temporary writ of injunction.

Upon the trial of the cause the court sustained the plaintiff's contention and granted a writ of injunction to enjoin and prevent the said company from removing its said offices and machine shops from the said city of Sweetwater.   The case is in this court upon writ of error to the judgment of the Court of Civil Appeals which sustained the judgment of the trial court.

The first proposition upon which the reversal of the judgment in this case is sought reads as follows:

"The city of Sweetwater had no power to make a contract with the railway company to locate and maintain its general offices, machine shops, and roundhouses, or either of them at Sweetwater, and the Court of Civil Appeals erred in holding 'that the city of Sweetwater, as a municipal corporation, was capable of entering into the contract' sued on, and in overruling the assignments of error based thereon."

The rights of the parties with reference to the streets of the city are regulated by the following article of our Revised Statutes:

"Art. 4426.  Such corporation shall have the right to construct its road across, along or upon any stream of water, water course, street, highway, plank road, turnpike or canal which the route of said railway shall intersect or touch; but such corporation shall restore the stream, water course, street, highway, plank road, turnpike or canal thus intersected or touched to its former state, or to such state as not to unnecessarily impair its usefulness, and shall keep such crossing in repair."

By the article just above quoted the State granted the right to a railroad company to construct its road upon the streets of a city, but by the following article that right is qualified:

"Art. 4438.  Nothing in this chapter shall be so construed as to authorize the construction of any railroad upon or across any street, alley, square or highway of any incorporated city or town without the assent of the corporation of said city or town."

The effect of the two articles, considered together, is to confer upon the railroad company the privilege of building upon the streets of Sweetwater upon condition that the city shall give its consent thereto. It therefore appears from the two articles of the statute that the city had the unqualified right to refuse its consent to the railroad company to build upon the street, and the question arises, what conditions or requirements may be attached to the giving of such consent.

Plaintiff in error relies upon Galveston & W. Ry. Co. v. City of Galveston, 90 Texas, 398, to support its proposition to the effect that the city had no power to impose any conditions or exact any consideration for the giving of its consent to the exercise of the privilege granted by the State.  The only point decided by this court in the case referred to was that when the city granted the right to occupy the streets in the city of Galveston the occupancy of the street was by virtue of the statute and the city could not attach conditions subsequent by which the right derived from the State could be defeated.  There is nothing in that case which intimates that the city might not exact from the railroad company the performance of some acts other than those which are specified by law in order that it might be authorized to enjoy the privilege granted by the State.  It is well understood that the city may require of the railroad company the performance of such acts as may be appropriate and necessary to keep the streets over which it passes in proper repair and proper condition for public use.

Article 4367 is in this language:  "Every railroad company chartered by this State, or owning or operating any line of railway within this State, shall keep and maintain permanently its general offices within the State of Texas at the place named in its charter for the locating of its general offices; and if no certain place is named in its charter where its general offices shall be located and maintained, then said railroad company shall keep and maintain its general offices at such place within this State where it shall have contracted or agreed or shall hereafter contract or agree to locate its general office for a valuable consideration; and if said railroad company has not contracted or agreed for a valuable consideration to maintain its general office at any certain place within this State, then such general offices

shall be located and maintained at such place on its line in this State as said railroad companies may designate to be on its line of railway. And such railroads shall keep and maintain their machine shops and roundhouses, or either, at such place or places as they may have contracted to keep them for a valuable consideration received; and if said general offices and shops and roundhouses, or either, are located on the line of a railroad in a county which has aided said railroad by an issue of bonds in consideration of such location being made, then said location shall not be changed; and this shall apply as well to a rail-road that may have consolidated with another as to those which have maintained their original organization."

Viewing this statute from the standpoint of the Legislature at the time it was passed we get a better comprehension of what was intended by its enactment. It is a matter of common knowledge of which this court will take notice that it was a common practice in this State for railroad companies to make terms and contracts with the towns and cities of the State by which they would secure subsidies and benefits of different kinds upon condition of locating their offices and machine shops, etc., at such places. We are therefore authorized to conclude that the Legislature had this condition of things in mind when it enacted article 4367. That article distinctly refers to the past and future with regard to these contracts and requires that railroads shall keep and maintain their machine shops and roundhouses, or either, at such place or places as they may have contracted, or may hereafter contract, to keep them for a valuable consideration received. Taking that article in connection with the article previously copied herein, it is a reasonable and proper inference that the Legislature intended to provide that the city should have authority to make terms with railroad companies in granting the right to run over its streets, and under the statute last quoted, the power to make the contract, which is in controversy, is quite evident. How could a location be made for a valuable consideration if the contracting city had no authority to contract? We conclude that the city had the power to make the contract with the railroad company; hence the doctrine of *ultra vires* is not involved.

The railroad company submits the following assignment of error: "The Court of Civil Appeals erred in holding that the evidence was sufficient to prove a contract between the railway company and the city for the location and maintenance of the general offices, machine shops and roundhouses at Sweetwater, in consideration of the passage of the ordinance of May 20, 1903, and erred in overruling the railway company's assignments of error Nos. 72, 74 and 75 questioning the sufficiency of the evidence to constitute the contract."

The evidence on the subject of making the contract is somewhat indefinite and would have justified the jury in finding that there was no intention on the part of McCaulley to make the contract. We may go further and say, that the preponderance of the evidence is against the city on this issue, but what this court is called upon to decide is whether there is any evidence which tends to prove the making of the contract by the railroad company. To state it more definitely (discarding all adverse testimony), does the evidence make such proof of a contract as would justify the jury in finding in favor of the city

upon that issue. If there is sufficient evidence to justify that finding, this court is without power to interfere with the verdict of the jury upon that issue. To state the proposition in another form, if the evidence upon the issue of making of the contract between the railroad company and the city be such that minds, honestly desiring to determine the question properly, might disagree on the subject, then this court is without jurisdiction of the issue.

We will not undertake to discuss in detail the evidence upon the subject of the making of the contract, that is, all of the circumstances which surrounded the transaction and which might have contributed to producing the impression on the mind of the city council that a proposition, or contract, was offered to them by McCaulley. There had been for some time considerable discussion in the city of Sweetwater in regard to the question of granting to the company permission to construct its road on the streets and establishing the offices and machine shops at that place. One ordinance had been adopted but was repealed. It appears from the evidence that the town was being canvassed on the matter with a view to securing action of the city council favorable to the railroad company and finally at a meeting of the council, McCaulley, the vice-president of the railroad company, who resided at the city of Sweetwater, appeared before that body and complained that the council was not disposed to grant the right of way over the streets for the use of the railroad company. An attorney who resided at Sweetwater also accompanied him and while they testified that no contract was offered or made, some of the councilmen testified directly that McCaulley told the council that if they did not grant the right of way, the city would not get the benefit of that which had been promised; that is, the location of the machine shops, offices, etc., and that if they did grant the right of way they would get the benefit of the location of such structures. Some of the councilmen did not understand it in that way and testified to that effect, however, we have naught to do with the weight of the evidence, the question is whether the terms used, with surrounding circumstances, justified the councilmen, who were acting upon the proposition, to conclude that McCaulley was offering them a contract to locate the roundhouse and machine shops, etc., at Sweetwater in consideration of the grant by the city of the right of way over the streets. It is not necessary that the contract should have been expressed in such definite terms as to leave no doubt upon the subject, but if the circumstances and the proposition which was made to the city council, taken together, justified the city council in believing that McCaulley intended to make a contract with them and that they acted upon that statement, then it would have that character, depending for its validity upon his authority to make it. We are of opinion that the evidence was sufficient to support the finding that the contract was made between McCaulley and the city council.

The next important question is, does the evidence establish the fact that McCaulley had authority to make the contract here sought to be enforced, or that his act was ratified by the company. Our law regulates the powers of railroad corporations and of its officers thus:

"Art. 4386. All the corporate powers of every railroad corporation

shall be vested in and be exercised by its legally constituted board of directors."

· "Art. 4387. There shall be a president of the corporation, who shall be chosen from and by the board of directors, and such other subordinate officers as the corporation by its by-law may designate, who may be elected or appointed, and shall perform such duties and be required to give such security for the faithful performance thereof as the corporation, by its by-laws, shall require."

It will be observed that the statute places all authority of the corporation in the board of directors, and the power of the officers of the company depends upon the action of the board of directors in conferring authority upon them. The fact that McCaulley was vice-president of the railroad company did not authorize him to make the contract in question, that power could only be derived from the board of directors, yet, we must keep in mind that it is not necessary that there should be express authority given, but whatever may be sufficient to justify the conclusion that the directors, that is, the authorized body of the railroad company, had conferred this authority upon McCaulley, or had, knowing of his having exercised it, approved or ratified it in any way would be sufficient. Missouri, K. & T. Ry. Co. v. Faulkner, 88 Texas, 651. It is claimed that under the by-laws of the corporation the vice-president was authorized, in the absence of the president, to exercise such authority as was given to the president, but there has been nothing adduced so far as we are able to find which tends to show that the board of directors ever conferred such authority upon the president himself. There is no direct evidence of the giving of authority by any officer authorized to do so to McCaulley to make this contract, and we must now determine from the evidence whether there was such approval and ratification as will bind the company. Gulf, C. & S. F. Ry. Co. v. Jones, 82 Texas, 156. McCaulley could not ratify his own acts. A binding ratification must be based upon the acts of those who could have conferred the power to do the act and must rest upon a knowledge of the facts. The ordinance granting consent of the city did not express the consideration that the company should locate the machine shops, roundhouse and offices at Sweetwater, therefore, the use of the streets under that ordinance did not constitute a ratification of that which was not expressed in the ordinance, unless it is shown to have been known to the officers whose acts are relied upon as a ratification.

It is shown that the company, by its board of directors, created an executive committee of three who had control of the affairs of the company and McCaulley was one of the committee, but there is no evidence that the committee knew of the contract made by McCaulley, or, knowing of the contract, authorized the use of the streets.

We are of opinion that the railroad company is not bound by the alleged contract, that the use of the streets was not accepted as a consideration for the location of the offices, machine shops and roundhouse at said city, and the city is not entitled to the injunction prayed for. It is therefore ordered that the judgments of the District Court and Court of Civil Appeals be reversed, that the temporary injunction

issued herein be ·dissolved and that the plaintiff go hence without day and recover of the city all costs.

*Reversed and rendered.*