### DALLAS JOINT STOCK LAND BANK OF DALLAS v. CAVITT et al.

#### No. 13336.

Court of Civil Appeals of Texas. Fort Worth.

March 6, 1936.

Rehearing Denied April 17, 1936.

joined by her husband, sold the land to Volney Cavitt, and on December 20, 1930, Volney Cavitt sold it to J. S. Kilgore. The note provided that in the event of default in payment of any installment at its maturity, the holder should have the option immediately to declare all remaining outstanding installments due and to proceed to foreclose the lien evidence by the deed of trust in order to collect them. All installments drew interest after their maturity at the rate of 8 per cent. per annum.

To further secure payment of said note, J. S. Kilgore, on December 27, 1932, executed a chattel mortgage on one-half of all crops to be grown on the 350 acres during the year 1933.

At the time J. S. Kilgore purchased the land from Volney Cavitt, he owned a tract of 140 acres in Limestone county free of encumbrance and occupied and claimed the same as the homestead of himself and wife, Mrs. Mattie Sue Kilgore, he being the head of the family; and the consideration for his purchase of the 350 acres was his conveyance to Volney Cavitt of his said homestead, $1,150 cash, and the assumption by Kilgore of the unpaid balance of the note in favor of the bank executed by Mrs. Mollie B. Cavitt and husband, said balance being recited as amounting to $16,025 all in accordance with the prior written agreement of the parties of date August 13, 1930.

Default having been made in payment of some of its installments, the bank exercised its option to declare all the unpaid installments due, and to institute this suit for personal judgment against Mrs. Mollie B. Cavitt and J. S. Cavitt and J. S. Kilgore for balance due on the note and for foreclosure of the deed of trust lien given as security therefor as against those defendants and also against Mrs. Mattie Sue Kilgore, wife of J. S. Kilgore.

In addition to general denial, defendants J. S. Kilgore and wife filed a cross-action praying for a cancellation of the deed of trust lien as to a tract of 191.85 acres out of the 350-acre tract covered by the deed of trust. The facts alleged as a basis for that relief are in substance as follows: At the time of J. S. Kilgore's purchase, Volney Cavitt was indebted to plaintiff bank for sums in addition to the note sued on herein and had made default in payment, on account of which he was being pressed by the bank for payment. The properties then owned by Volney Cavitt were not of suffi-

Renfro, McCombs & Kilgore, of Dallas, for appellant.

Crate Dalton, of Dallas, and Harry P. Jordan, of Waco, for appellees J. S. Kilgore and wife.

DUNKLIN, Chief Justice.

Mrs. Mollie B. Cavitt and her husband, J. F. Cavitt, executed their promissory note for the principal sum of $17,000, dated November 2, 1925, payable to the Dallas Joint Stock Land Bank of Dallas, doing business under the "Federal Loan Act," in 65 semi-annual installments of $595 each and one last installment of $496.91, and at the same time executed a deed of trust to secure the same on 350 acres of land situated in McLennan county. Thereafter Mrs. Cavitt,

cient value to liquidate the debts against them if sold under a foreclosure decree. With knowledge of those conditions, W. L. Roots, vice president and duly authorized agent of plaintiff bank, and Volney Cavitt and J. S. Kilgore, entered into the following agreement: Cavitt would convey to Kilgore the entire 350 acres covered by the bank's deed of trust, and in consideration therefor Kilgore would assume the unpaid balance of the note sued on herein, and in addition thereto would convey to Cavitt his unencumbered 140-acre homestead tract and in lieu thereof would hold as his homestead the 191.85 acres out of the 350-acre tract free of the deed of trust lien, and would also pay to Cavitt the sum of $1,150 cash.

It was alleged that defendant Kilgore consummated the trade with Cavitt relying upon that agreement by Roots as vice president and agent of the bank, and immediately thereafter moved "with his family on said 191.85 acre tract and ever since has occupied and claimed the same as his homestead."

It was further alleged that after the consummation of that trade, Cavitt, with the assistance of said W. L. Roots as agent and vice president of the bank, borrowed $5,123 by executing a lien on said 140-acre tract conveyed to him by Kilgore, and that plaintiff applied all of that fund in satisfaction of other indebtedness owing to it by Cavitt and not secured by the deed of trust now in suit.

By reason of those facts, it was alleged that plaintiff bank is estopped from claiming and enforcing its mortgage lien against the 191.85-acre tract.

By supplemental petition plaintiff pleaded a general denial to that cross-action, and, further, a special denial of W. L. Roots' authority to bind the bank by the agreement alleged in the cross-action. It was further alleged that the plaintiff bank was without lawful authority to make the alleged agreement, since it was incorporated under the Federal Farm Loan Act prescribing its powers and requiring it to deposit all its first mortgage lien notes with the registrar originally appointed by the Federal Farm Loan Board, but now under the supervision of the Land Bank Commissioner, as collateral security for bonds issued by the plaintiff bank; and plaintiff is without authority to make any agreement for releasing mortgage liens belonging to it for any purpose except for full payment thereof. Plaintiff pleaded further that if said agreement was in fact made as alleged, then the same was not in writing but in parol, and was therefore void and unenforceable because in contravention of the statute of frauds.

In answer to special issues, the jury found:

First. That on or about December 10, 1930, the defendant J. S. Kilgore had an agreement with W. L. Roots that the plaintiff, the Dallas Joint Stock Land Bank, would release the lien in question against 191.85 acres of land in question.

Second. That defendant J. S. Kilgore relied on that agreement.

Third. That W. L. Roots had the authority to make that agreement.

All other issues of fact were determined by the trial judge on undisputed evidence.

Personal judgment was rendered in plaintiff's favor for the amount of its debt as against J. F. Cavitt and J. S. Kilgore, with foreclosure of its mortgage lien against the 350 acres covered by the mortgage, less the 191.85 acres, and for J. S. Kilgore and wife on their cross-action for title to the 191.85 acres free of the mortgage lien.

Article XIII of the by-laws of plaintiff bank reads: "All transfers and conveyances of real estate, release deeds and releases of mortgages, shall be made by the Corporation, under seal, in accordance with the orders of the Executive Committee or of the Board of Directors, and shall be signed by the President and attested by the Secretary."

█ It was alleged in plaintiff's pleadings that plaintiff is a corporation duly incorporated under the provisions of the Federal Farm Loan Act of the United States Government. In the absence of any pleading of defendants under oath denying that it was so incorporated, that allegation must be accepted as true. Article 2010, subd. 7, Revised Civil Statutes of 1925.

The Federal Farm Loan Act, under which plaintiff was incorporated, places the general management of its business in a board of directors of not less than five members, without defining the duties of the officers to be appointed by the board.

Following are provisions of title 12 of United States Code Annotated:

Chapter 7 provides for the creation of the Federal Farm Loan Board, charged with the duty to "divide the continental United States, excluding Alaska, into twelve dis-

tricts, which shall be known as Federal land bank districts" (section 671), with authority to grant charters to federal land banks and joint-stock land banks for the purpose of making loans secured by first mortgage lien in accordance with provisions of the act and subject to the supervising control of the Federal Farm Board. And section 701 of chapter 7 provides: "All Federal land banks and joint stock land banks organized under this chapter, when designated for that purpose by the Secretary of the Treasury, shall be depositaries of public money, except receipts from customs, under such regulations as may be prescribed by said Secretary; and they may also be employed as financial agents of the Government; and they shall perform all such reasonable duties, as depositaries of public money and financial agents of the Government, as may be required of them."

Section 781 provides:

"Every Federal land bank shall have power, subject to the limitations and requirements of this chapter—* * *

"To receive and to deposit in trust with the farm loan registrar for the district, to be by him held as collateral security for farm loan bonds, first mortgages upon farm land qualified under section 771 of this chapter, and to empower national farm loan associations, or duly authorized agents, to collect and immediately pay over to said land banks the dues, interest, amortization installments and other sums payable under the terms, conditions, and covenants of the mortgages and of the bonds secured thereby."

Section 891: "Whenever any Federal land bank, or joint stock land bank, shall receive any interest, amortization or other payments upon any first mortgage or bond pledged as collateral security for the issue of farm loan bonds, it shall forthwith notify the farm loan registrar of the items so received. Said registrar shall forthwith cause such payment to be duly credited upon the mortgage entitled to such credit. Whenever any such mortgage is paid in full, said registrar shall cause the same to be canceled and delivered to the proper land bank, which shall promptly satisfy and discharge the lien of record and transmit such canceled mortgage to the original maker thereof, or his heirs, administrators, executors, or assigns."

Section 931 reads in part as follows: "First mortgages executed to Federal land banks, or to joint-stock land banks, and farm loan bonds issued under the provisions of this chapter, shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt, from Federal, State, municipal, and local taxation."

It is elementary that the plaintiff bank could exercise no powers except those expressly or impliedly authorized by the act under which it was incorporated. And certainly it could do no act that was impliedly prohibited, as we believe to be true of the agreement of W. L. Roots now under review. Northside Ry. Co. v. Worthington, 88 Tex. 562, 30 S.W. 1055, 53 Am.St.Rep. 778. Especially, since the rule of strict construction is applied by the United States Supreme Court to determine the powers and duties of national banks because of public interest involved. California Nat. Bank v. Kennedy, 167 U.S. 362, 17 S.Ct. 831, 42 L.Ed. 198; First Nat. Bank v. Converse, 200 U.S. 425, 26 S.Ct. 306, 50 L.Ed. 537; Texas & Pacific R. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777. And that rule should apply with added force here, since the act in question provides that first mortgages executed to federal land banks shall be deemed and held to be instrumentalities of the federal government.

The evidence showed that, at the time of the trade, the 140-acre tract deeded to Volney Cavitt by J. S. Kilgore and wife was their homestead free of encumbrance, and that they intended to make the 191.85-acre tract their new homestead, likewise free of encumbrance, all of which was discussed with Cavitt and Roots at the time. After the trade was consummated, J. S. Kilgore moved upon the latter tract with his family and ever since has occupied and claimed it as his homestead.

The evidence further showed that immediately after the trade was closed, Volney Cavitt procured a loan from the John Hancock Insurance Company on the 140-acre tract, out of which that company, at Cavitt's direction, paid over to the bank $3,000; and of that sum $1,865.91 was applied as a credit on the note here sued on by plaintiff, and the balance was applied on two other items of indebtedness of Volney Cavitt to plaintiff bank. No evidence was introduced to show any objection from defendant Kilgore to that application of funds. Nor was there any testimony tending to show notice at any time to the board of directors of the bank or any of its officers, other than Vice President Roots himself, of his agreement for the bank to a re-

lease of its mortgage lien on the 191.85 acres.

 The evidence showed that while W. L. Roots was vice president of the bank he was employed as field manager, with supervision over the field men, and making loans but under the direction of the president and with authority to adjust equities that might arise provided the president approved same. Obviously, employment for those purposes would not carry with it authority to make an agreement for the bank to release its lien on all but approximately 160 acres of the entire 350 acres covered by its deed of trust.

The office of vice president did not of itself imply the inherent power to bind the plaintiff by the agreement found by the jury in answer to the first issue. Kansas City, M. & O. R. Co. v. Sweetwater, 104 Tex. 329, 137 S.W. 1117; Henderson Merc. Co. v. First Nat. Bank, 100 Tex. 344, 99 S.W. 850; 10 Tex.Jur., § 323, p. 980; Thompson on Corporations (3d Ed.) p. 713, § 1616.

And in the absence of evidence tending to show notice to any of the other officers of the bank of the agreement made by Roots, the bank cannot be held to a ratification thereof by the application of the $1,865.91 paid by Volney Cavitt as a credit on the note in suit. Logue v. Southern Kansas City Railway Co., 106 Tex. 445, 167 S.W. 805; Kansas City, M. & O. R. Co. v. Sweetwater, supra; Guaranty Bank & Trust Co. v. Beaumont Cadillac Co. (Tex.Civ.App.) 218 S.W. 638 (writ refused). And in the absence of a ratification of that unauthorized agreement of W. L. Roots, there is no basis for application of the equitable doctrine of estoppel against the bank by reason of receipt of the payment so made.

For the reasons indicated above, we hold as a conclusion of law that defendants J. S. Kilgore and wife did not discharge their burden of proof to show that W. L. Roots had lawful authority to bind plaintiff by the agreement found by the jury and noted above. Franco-Texan Land Co. v. McCormick, 85 Tex. 416, 23 S.W. 123, 34 Am. St. Rep. 815; Henderson Merc. Co. v. First Nat. Bank, supra; Fitzhugh v. Franco-Texas Land Co., 81 Tex. 306, 16 S.W. 1078.

Accordingly, the judgment of the trial court in favor of the defendants Kilgore and wife on their cross-action canceling plaintiff's mortgage lien on 191.85 acres of the 350-acre tract in question and awarding to them title thereto free of that lien is reversed, and judgment is here rendered denying that relief. And the judgment of the trial court is so reformed as to award appellant personal judgment against defendants J. F. Cavitt and J. S. Kilgore, jointly and severally, as of date of the judgment below, to wit, March 1, 1935, for the sum of $20,844.14, which the trial court found to be due on that date on the note sued on by plaintiff bank, with interest thereon at the rate of 8 per cent. per annum and costs of suit, with foreclosure of plaintiff's mortgage lien evidenced by the deed of trust alleged in its petition on the 350 acres therein described, as against all of the defendants and as against intervener Mrs. Mattie Sue Kilgore, wife of defendant, J. S. Kilgore; for which plaintiff may have its writ of execution as in such cases made and provided.

No complaint is made of the judgment in cause No. 7976–A in the trial court, consolidated with the suit under discussion here, and therefore that judgment is left undisturbed.

Reversed and rendered in part, and reformed and affirmed in part.