### HARRISON v. LIFE INS. CO. OF VIRGINIA.

No. 12455.

Court of Civil Appeals of Texas. Dallas.

Sept. 24, 1938.

Rehearing Denied Oct. 29, 1938.

452

R. G. Scurry, of Dallas, for appellant.

Hamilton, Lipscomb, Wood & Swift, of Dallas, for appellee.

YOUNG, Justice.

Appellee, as plaintiff below, brought suit against appellant Harrison for the balance due on a certain deed of trust note, after a foreclosure on June 6, 1933, and a credit by the trustee of the amount paid at such sale; the property involved being bought in by appellee, through trustee's deed to J. Thomas Lawrence, an officer of said Life Insurance Company. Defendant plead that he was no longer liable on said note, following the above foreclosure—in that, on or about December 11, 1933, defendant and plaintiff company, acting through its duly authorized representatives, B. F. Ballew and George A. Nicoud, entered into an agreement whereby said plaintiff waived any claim of personal liability against defendant by reason of the execution of said note, in consideration of defendant's waiving any irregularities in the said foreclosure proceedings and an acknowledgment by defendant that title passed to said J. Thomas Lawrence at the trustee's sale; also in consideration of a further verbal release by defendant Harrison of any claim for damages, in an alleged premature evic-

tion from the property under foreclosure. Defendant further alleged that thereupon he did in fact acknowledge title in said J. Thomas Lawrence and waived any claim for damages incident to all previous transactions and as a consequence he was no longer personally liable to plaintiff in any amount.

At the close of the testimony a jury verdict was rendered under peremptory instruction of the court for appellee Insurance Company against appellant for the balance due on the note in suit, interest and attorney fees, and this appeal was taken.

Appellant here complains of the above instruction and jury verdict on grounds thus concretely stated in his brief: "Our position in this case is that there was sufficient evidence to go to the jury on the question whether Ballew had apparent authority to agree with the defendant that no deficiency judgment would be asked against him in consideration of complying with the plaintiff's request to acknowledge the sufficiency of Lawrence's title under the foreclosure sale; and that even if this were not true, the undisputed evidence shows ratification on the part of the plaintiff of that agreement".

Prior to the foreclosure and sale, the note in question had been placed with an attorney for collection, by reason of delinquent interest and principal payments thereon, the amount of which is not certain from the record. After some correspondence between appellee's attorney and appellant, the condition of the note remaining the same, notices of foreclosure under the deed of trust were given and the property sold under said instrument on May 2, 1933; and by reason of the extension of the Moratorium Law at the time, the property was again sold after notice, on June 6, 1933, to J. Thomas Lawrence, as above stated. Appellee's rental agent had taken possession of the premises in question after the May foreclosure, but shortly gave appellant a key and the latter had virtual possession thereafter until sometime following the negotiations of December 11, 1933, on which date appellant claims he secured a release of personal liability as to the balance of this note. It appears that between the June foreclosure and said December 11th transactions, appellee had learned of appellant's desire to re-acquire title to the property through a new loan or other arrangement that might be agreed upon between the parties. Messrs. Nicoud and Ballew, appellee's duly authorized agents, as alleged, visited appellant at his Fort Worth law office in efforts to secure a satisfactory proposition, looking to a resale of the property to its former owner, the defendant. As a result of this conference, the following proposal was written by appellant for action by appellee Insurance Company at its home office in Richmond, Virginia:

"December 11, 1933
"The Life Insurance Co. of Virginia,
"Richmond, Virginia.
"Gentlemen:

"Referring to house No. 1109 Mistletoe Drive, being one-fourth of Lot 17 and the South 44 feet of Lot 18, in Block 8 of Sangamo Park Addition to the City of Fort Worth, I propose to pay you $50.00 on February 15, 1934, and $50.00 on the 15th of each succeeding month until July 15th, 1934, at which time I propose to pay you $500, and then we will make a permanent refinancing arrangement covering this house and your loan on it.

"I hereby acknowledge that the title to the above described property has passed from me to J. Thomas Lawrence, through foreclosure.

"It is understood that the monthly payments made by me commencing February 15th, 1934, shall be applied, first toward accrued interest on the amount of your investment, and any surplus applied to the reduction of said investment. The accrued interest is to be calculated at the rate of 7% per annum.

"It is agreed between us that after the payments above described have been fully met, you are to have this property reconveyed to me, at which time I agree to execute notes for such balance as may be determined as due thereon, such notes to be additionally secured by a deed of trust on the property.

"The property in question is now vacant, and I hereby agree that in the event said property is rented prior to February 15th, 1934, in addition to the payments above outlined, I will remit to your company the rental received from said property prior to February 15th, 1934.

"On or before July 15th, 1934, all taxes on this property will have been paid by me. Yours truly."

Appellee's home office made no direct answer to the above proposal, but in Jan-

uary 1934, through another Dallas representative, appellee sent to appellant a lease and reconveyance contract, containing additional provisions to those contained in the December letter, to which appellant made written objections and refused to sign. Further correspondence was later had between the Dallas agents of appellee and appellant with reference to the last named sales contract, after which such relations terminated, and this suit was filed in February, 1936. No letters were ever written directly to appellant from the main office of the Insurance Company at Richmond.

It was in the negotiations that resulted in the above outlined letter of December 11, 1933, that appellant contends he became released from further personal liability as to the balance remaining upon the note. Referring to this letter or proposal in writing, appellant testified: "Somewhere in the discussion, and I think it was after we had concluded this tentative agreement, Mr. Ballew said that the company wasn't satisfied with Mr. Lawrence's title, didn't say why, and he reminded me that I had offered to give a deed of reconveyance any time they wanted it instead of their foreclosing on it, and asked me, in view of that, if I would be willing to give him a written acknowledgment that Mr. Lawrence's title was good. And I told him that, if we went through with this proposition that he was then tentatively agreeing on, he wouldn't need any written agreement from me about Lawrence's title because I was going to take Lawrence's title and, whether it was good or bad, it wouldn't make any difference to the insurance company, but I told him if his company turned down this proposition and we didn't carry it out that then I would be willing to give him the written agreement that Lawrence's title was good with the proviso that that would end the matter as far as I was concerned and that there would be no further claim on me; in other words, I told him I didn't want to give him the property and still have them to try to hold me on the debt, and he said that would be agreeable, would be all right, or something to that effect. So, when we wrote this letter, I included in the letter the acknowledgment * * *".

Appellant further testified that his acknowledgment of good title in appellee, conditioned upon his being discharged of subsequent liability on the note, was a distinct and separate arrangement from the proposal in the aforesaid letter. He stated on this point: "No, the two things are entirely independent of each other. What they wanted from me primarily was a letter of acknowledgment that Lawrence's title was good, which I was willing to give them with the qualification I just testified to; then, separate from that, they wanted a written statement of my proposition as to going on with the loan; but, instead or writing them separately, I just wrote it all on one piece of paper".

Appellant knew that Mr. Ballew (whose apparent authority to effectuate a release on the balance of the note is claimed) was not an officer of the plaintiff Insurance Company, and such agent made no statement that he was authorized to waive the unpaid part of the debt; defendant admitting that he did not know the nature of the authority of Ballew, but that the latter was simply "in charge of negotiations". Appellant also knew that any matters of importance in relation to the note and property had to be referred back to the home office of the Company in Virginia, as was done in the case of the December letter, in which there is no reference whatever to a release of the note; neither is it contended that such note was ever in the possession of Mr. Ballew. No statement or course of conduct on part of appellee as to the authority of this agent is shown in the record before us; nor facts indicating knowledge by appellee, thereafter, of the release which is here urged as a defense. Appellant's main contention as to ratification is that the retention of the letter of December, 1933 in appellee's files in its home office, with appellant's acknowledgment of title included therein, charged the Life Insurance Company with knowledge of the facts existing outside of the contents of said letter, that resulted in the acknowledgment as expressed therein; also that plaintiff below waited a considerable time before filing suit.

 Even assuming the existence of an agreement between Ballew, the agent, and appellant for a release of the note, contingent on appellee's rejection of the proposal set forth in this much discussed letter, did such agent possess apparent authority to bind his Company under the instant facts?

"When an apparent authority is claimed to arise from representations or conduct, the acts and statements of the principal

must be looked to·for the requisite foundation and not those of the agent; the former alone can give rise to authority of this character; the latter are never in themselves sufficient for that purpose. The principal must have affirmatively held the agent out as possessing sufficient authority to embrace the particular act in question, or else have voluntarily and in due awareness, actual or constructive, of the agent's assumption of power permitted him to act as if he had the requisite authority. The powers which the agent pretends to have, or assumes to exercise, are inoperative as a basis for ostensible authority when the principal is not affected by knowledge of them and does not validate them by acquiescence or assent; and no mere combination of circumstances which may, without the principal's participation, mislead third persons, however reasonably, into a false inference of authority affords a sufficient predicate for apparent authority * * *." 2 C.J.S., Agency § 96, pages 1214, 1215; Ford Motor Co. v. Maddox Motor Co., Tex. Civ.App., 3 S.W.2d 911, affirmed by Supreme Court 23 S.W.2d 333; Great American Cas. Co. v. Eichelberger, Tex.Civ.App., 37 S.W.2d 1050; Continental Oil Co. v. Baxter, Tex.Civ.App., 59 S.W.2d 463.

Another essential element is, that the third party must be misled into altering his position, whereby injustice would result if the principal were permitted to deny the assumed authority of the agent—being agency by estoppel. Also see 2 C.J.S., Agency § 96, page 1219, supra and Reo Motor Co. v. Barnes, Tex.Civ.App., 9 S. W.2d 374; Case Threshing Mach. Co. v. Morgan, Tex.Civ.App., 195 S.W. 922. It is not even claimed by appellant that this final necessary ingredient of apparent authority, just mentioned, is in the situation under review.

■ Therefore, in view of the above text and decisions, and assuming all facts to be as testified by appellant, the agent Ballew was not ostensibly authorized to bind his principal, the Insurance Company, by the arrangement for release, if made. Nor was there any evidence of ratification to warrant a jury issue, hence the trial court correctly disposed of this case as he did, by peremptory instruction. We quote again from 2 C.J.S., Agency § 42, page 1081, supported by abundant Texas authorities, as well as from the great majority of other American jurisdictions: "* * * it is ordinarily required that for a ratification of an unauthorized act or transaction of an agent to be valid and binding, the principal shall have full knowledge, at· the time of the ratification, of all material facts and circumstances relating to the unauthorized act or transaction, or that someone authorized to represent the principal, other than the agent whose act is being considered, have such knowledge". Ratification cannot be based upon imputed knowledge of an unauthorized act of the agent under the facts here. See First Trust Joint Stock Land Bank v. Diercks, 222 Iowa 534, 267 N.W. 708. Mere retention of the letter in the files of the Company and a considerable delay in bringing the present suit are insufficient evidences of acquiescence to support the defense of ratification. Parks Grain Co. v. Townsend, Tex.Civ.App., 267 S.W. 1011, 1012; Daggett et al. v. Corn, Tex.Civ.App., 54 S.W. 2d 1098, 1100.

■ Also, we agree with appellee that, "Even if Ballew had released the note and had authority to do so, there would be no consideration for such release". There is not a scintilla of evidence in the record of any irregularities in either foreclosure sale. Neither is his claim of unlawful dispossession under the May foreclosure supported by any proof of actual injury. This claim covered only about two weeks of the particular month, in which period the house was vacant and had been for a previous eight or ten months. Appellant then resumed possession of the premises, getting whatever rents that accrued for a considerable time thereafter, with plaintiff company paying the taxes. Consequent damages therefore, if proven, were so nominal as to be within the maxim of "damnum absque injuria". Certainly, the waiver of such a claim would furnish no adequate consideration for the release of a $3,000 debt.

The action of the trial court in granting the peremptory instruction was proper and the judgment for appellee is affirmed.

Affirmed.