## BANKERS PROTECTIVE LIFE INS. CO. v. ADDISON.

### No. 6104.

Court of Civil Appeals of Texas. Amarillo.

Jan. 15, 1951.

Leake, Henry, Golden & Burrow, Dallas, for appellant.

Leachman, Matthews & Gardere, Dallas, for appellee.

PITTS, Chief Justice.

Appellee, Dr. J. J. Addison, filed suit against appellant, Bankers Protective Life Insurance Company, a corporation and a mutual company, for the sum of $500 as a reasonable claim for medical services rendered by appellee in treating one Michael J. Borenis, who had a compound fracture of the jaw and was a policy holder of appellant and who will hereafter be referred to as the injured. Appellee alleged that appellant's agent, Carl A. Lindberg, who will be hereafter referred to as agent, had orally promised appellee that appellant would pay him for such professional services rendered. Appellee further alleged that such agent was acting at the time within the scope of his authority or, in the alternative, that such agent had apparent authority to so bind appellant, or in the further alternative; that appellant had ratified the agreement made by its said agent to pay appellee.

The case was tried to a jury and judgment was rendered for appellee in the sum of $500 upon the verdict. However at the close of the evidence appellant moved for a peremptory instruction and later for judgment non obstante veredicto but was overruled in both instances. Appeal was perfected to the Court of Civil Appeals at Dallas and the same was transferred to this court by order of the Supreme Court.

Appellant predicates its appeal upon eleven points of error but it is our opinion that the controlling issues to be determined are set forth in the first and second points. In those points appellant contends that the trial court erred in refusing to sustain its motion for a peremptory instruction and further erred in refusing to sustain its motion for judgment non obstante veredicto. The evidence heard and the law governing such matters being common to both points, they were jointly presented by appellant, contending that the evidence was insufficient to impute liability on its part. The evidence conclusively established that the agent Lindberg was not acting within the scope of his employment as an agent of appellant when he employed appellee to administer professional services in treating the insured Borenis and the jury so found. Appellee's claim must therefore stand or fall upon the theory of the agent's apparent authority to act for appellant or upon the theory of legal ratification of the agent's acts subsequently by appellant. We will review briefly the evidence heard as it may be related to these issues.

Appellee, appellant's general manager Ford, Lindberg the agent, and Borenis the insured, all testified. The substance of their testimony was, in effect, that Lindberg was a part time agent of appellant to solicit insurance applications only and not to settle or adjust claims of any nature; that in the course of his employment the said agent wrote a hospitalization insurance policy for Borenis, which policy was in force and effect soon thereafter when the agent found Borenis injured with

a compound fracture of the jaw as a result of a fist fight and took Borenis to appellee for treatment; that the said agent told appellee that Borenis had a hospitalization insurance policy with appellant who would pay the bill for treatment if Borenis were hospitalized; that Lindberg did not tell appellee that he was there as appellant's agent but left some professional cards in appellee's office with the words "Lindy the Insurance Man" stamped on them, but appellee gave little, if any, attention to the said cards but relied upon the agent's promise that appellant would pay the bill without calling for the agent's authority to bind appellant and without contacting appellant to verify the agent's authority; that appellee had never met Lindberg before and had never heard of appellant before; that Lindberg thereafter told Ford, appellant's general manager, that Borenis, one of his policy holders, had been injured and he had taken Borenis to appellee but the injured had not been hospitalized; that no written report was made to appellant and no other information was then furnished appellant concerning the injury; that Borenis was never hospitalized but appellee treated his injuries and no further information was furnished appellant or its authorized agents until appellant received some weeks later appellee's bill or claim for the sum of $500 for professional services rendered; that appellant returned the claim to appellee and denied liability under the terms of the policy, a copy of which was introduced in evidence. The policy provides for benefits only in the event that such an injured policy holder is confined in a licensed hospital under the direction of a competent physician or surgeon for a period of eighteen hours or longer.

The question of an agent's apparent authority to bind his principal was discussed by this court in the case of Wewerka v. Lantron, Tex.Civ.App., 174 S.W.2d 630, 633. This court there stated that:

"In Great American Casualty Co. v. Eichelberger, 37 S.W.2d 1050, 1052, writ refused, the Waco Court of Civil Appeals, speaking through Justice Alexander, and citing 1 Words and Phrases, Third Series, page 507 defined 'apparent authority' as follows: 'By apparent authority is meant such authority as a reasonably prudent man, using diligence and discretion in view of the principal's conduct, would naturally and reasonably suppose the agent to possess.'

"In the same opinion it is further stated: 'Apparent authority is based on estoppel, and can arise from but two sources: First, the principal may knowingly permit the agent to so hold himself out as having such authority, and in this way the principal becomes estopped to claim that the agent does not have such authority. * * * Second, the principal may so clothe the agent with the indicia of authority as to lead a reasonably prudent person to believe that he actually has such authority.'

*    *    *    *    *    *

"In 2 C.J. 574, § 214, on this same question, it is said: 'The apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his agent.'"

From these and other authorities it is clearly seen that there can be no apparent authority of an agent without acts or conduct of some sort on the part of the principal and such acts or conduct of the principal must have been known and relied upon in good faith and as a result of the exercise of reasonable prudence by a third person as claimant and such must have produced a change of position by claimant to his detriment. Continental Oil Co. v. Baxter, Tex.Civ.App., 59 S.W.2d 463; Harrison v. Life Ins. Co. of Virginia, Tex.Civ. App., 121 S.W.2d 451; Bell v. Moody, Tex.Civ.App., 147 S.W.2d 852; Hearn v.

Hanlon-Buchanan, Tex.Civ.App., 179 S.W. 2d 364.

In the case at bar appellee had never known Lindberg, appellant's part time agent for solicitation of business only, before and had never heard of appellant before. Appellee relied wholly on statements made by Lindberg and knew nothing about any acts or conduct of appellant or any of its agents with authority to so bind appellant. Appellee was not therefore misled by any acts or conduct of appellant but he relied wholly on the statements of Lindberg who had no apparent authority as a matter of law to bind appellant.

Appellee contends that the professional cards left with him by Lindberg gave the said agent apparent authority to bind appellant but we do not so conclude. The cards were advertising material only and did not bear Lindberg's name nor show him to be an agent. Appellee did not attach much, if any, significance to the cards for he testified that they were given to his office nurse and he did not know whether he ever looked at the cards or not. Such a contention made by appellee is overruled. Great American Casualty Co. v. Eichelberger, Tex.Civ.App., 37 S.W.2d 1050; National Cash Register Co. v. Wichita Frozen Food Lockers, Tex.Civ.App., 172 S.W.2d 781, 788, affirmed, 142 Tex. 109, 176 S.W. 2d 161. The latter case cited is similar to the one at bar in that the transaction between the parties was the first they had ever had, the agent in question had no authority except as a salesman and there was no evidence of any act of the principal which could have caused the third party (appellee here) to believe that the agent possessed any authority to bind his principal on an oral contract such as that relied upon in that case as well as in this case. In disposing of the issue of apparent authority in that case the court said in part: " * * * that very little authority could be inferred from the acts of the agent, and this being the defendant's first transaction with such agent, it was but natural and prudent, under the circumstances, that they should make inquiry and learn what kind of agent he actually was and the extent of his powers; that the law

charged defendants with such duty and if they neglected it, they did so at their peril." In the case at bar appellee testified that he had never met Lindberg before and had never heard of appellant before. What appellee did for Borenis was based solely and exclusively upon the statements, acts and conduct of Lindberg and not upon anything anybody else said or did. Appellee was a professional man admitted to practice both dental surgery and medicine in the State of Texas. He was not wholly without experience. He must have known that any contract for pay he might receive from appellant for treating Borenis for injuries would be determined by Lindberg's authority as appellant's agent as well as by the terms of the hospitalization insurance policy contract Lindberg told appellee Borenis possessed. Yet appellee made no inquiry or investigation about either the agent's authority or the terms of the policy. He therefore acted at his own risk and peril in the matter and, as a matter of law, not as a result of Lindberg's apparent authority.

Unauthorized acts of an agent, or one purported to be an agent, may be ratified by the principal even by implication provided such is done with full knowledge of all material facts surrounding the unauthorized transaction in question. Or such may be ratified by a course of conduct tending to show an intention of ratification. But knowledge on the part of the principal of all material facts surrounding the unauthorized transaction is an element without which there can be no ratification.

The rule is well stated by 2 Corpus Juris Secundum, Agency, § 42, p. 1081, in the following language:

"Ordinarily the principal or his representative, other than the actor, must have full knowledge, at the time of ratification, of all of the material facts and circumstances relating to the unauthorized act of the person who assumed to act as agent.

"As a corollary of the rule stated, it follows that if material facts be suppressed or unknown there can be no valid ratification, and this regardless of the purpose or lack thereof in concealing such facts

and regardless of the parties between whom the question of ratification may arise."

The same rule is likewise announced in a little different language by 2 Tex.Jur. 484, paragraph 87, and by 2 American Jurisprudence 179, paragraph 224. The latter text gives the rule and further states that the principal "must have been in possession of all the facts and must have acted in the light of such knowledge." The rule of law stated by the three text writers was also announced by the Texas Supreme Court in the case of Vincent v. Rather, 31 Tex. 77, again in The City of Laredo v. Macdonnell, 52 Tex. 511, again in Kansas City, M. & O. Ry. Co. of Texas v. City of Sweetwater, 104 Tex. 329, 137 S.W. 1117, and authorities have since consistently adhered to the rule. In support of the said rule we likewise cite Harrison v. Life Ins. Co. of Virginia, supra, and Gaines v. Traders & General Ins. Co., Tex.Civ. App., 99 S.W.2d 984, by this court.

In the case at bar there is no evidence that has a tendency to support the contention that appellant, through any of its authorized agents, acquired the necessary knowledge to ratify the unauthorized transaction of Lindberg at any time prior to appellant's receipt of appellee's statement and claim long after the services in question had been rendered by appellee. Viewing the evidence in its light most favorable to appellee, it reveals that Lindberg told Ford, appellant's general manager, that a policy holder had been injured and he (Lindberg) had taken the injured to appellee. Upon Ford's inquiry if the injured had been taken to a hospital Lindberg replied, "not yet". The evidence reveals that the injured was never taken to the hospital for treatment by appellee. There is no evidence even suggesting that Lindberg ever told Ford or any other of appellant's authorized agents that he (Lindberg) had attempted to bind appellant to pay appellee's bill for services rendered. Appellee testified that he on one occasion called Ford's wife by telephone in an effort to locate Lindberg but there is no evidence that anything was said even to her about Borenis' injuries, appellee's treating him or his making any claim to ap-

pellant for services rendered. The evidence reveals that Ford had no information about Lindberg's unauthorized transaction with appellee until he received appellee's claim long after his services had been performed. Not having had any knowledge of the material facts concerning the unauthorized transactions of Lindberg in his effort to bind appellant, it could not have, as a matter of law, ratified the unauthorized transaction of Lindberg to bind it. Neither was there any evidence tending to show a course of conduct on the part of appellant's authorized agents such as would show ratification of Lindberg's unauthorized transaction.

Appellee further contends that he should recover because appellant ratified Lindberg's acts by reason of appellant having received a benefit as a result of appellee's services rendered in treating Borenis. The basis for such is quite speculative in that the contention is made, in effect, that if appellee had not treated Borenis, infection might have been the result and Borenis might have then found it necessary to go to a reputable hospital for treatment, in which event appellant might have been compelled to pay benefits under the hospitalization insurance policy Lindberg had sold to Borenis. We do not think such a contention is at all tenable. If any recovery could be had in a case such as this because appellant received benefits as were claimed, the benefits received by the principal must have been certain, direct and proximate while in the case at bar the benefits, if any, received by appellant by reason of appellee's services in treating Borenis, were remote, uncertain, indirect, speculative and are merely incidental to the unauthorized transaction of Lindberg. At any rate, a principal does not ratify an unauthorized transaction of his agent by retaining the benefits after discovery thereof, where it is beyond the principal's power to reject the benefits. If appellant profited here by reason of benefits, it was beyond its power to reject the benefits and there was no ratification as a result thereof. Swayne v. Union Mut. Life Ins. Co., Tex. Civ.App., 49 S.W. 518; Texas Pacific Coal & Oil Co. v. Smith, Tex.Civ.App., 130 S.W.

2d 425; Massachusetts Bonding & Ins. Co. v. Pittsburg Pipe & Supply Co., Tex.Civ. App., 135 S.W.2d 818.

Under the record and the authorities cited, it is our opinion that the trial court erred in its refusal to give a peremptory instruction in favor of appellant at its request and that it further erred in its refusal to sustain appellant's motion for a judgment non · obstante veredicto. Appellant's first and second points of error are therefore sustained. By reason of this action the controlling issues of the case are disposed of and it is not necessary to pass on appellant's other points of error. The judgment of the trial court is reversed and judgment is here rendered for appellant and to the effect that appellee take nothing by reason of his suit. Reversed and rendered.