The **UNITED STATES** of America, For the Use of **BROWN BROTHERS GRADING COMPANY, Plaintiff,**

v.

**F. D. RICH COMPANY, Incorporated, American Reinsurance Company, United States Fidelity and Guaranty Company, General Reinsurance Corporation and Transamerica Insurance Company, Defendants.**

**Civ. A. No. 68–461.**

United States District Court
D. South Carolina,
Columbia Division.

June 21, 1968.

Irvine F. Belser, Jr., and Clinch H. Belser, of Belser, Belser & Baker, Columbia, S. C., and Robert C. Dillon, Anniston, Ala., for plaintiff.

Douglas McKay, Jr., of McKay, McKay, Black & Walker, Columbia, S. C., for defendants.

HEMPHILL, District Judge.

Pressed by the Use plaintiff, as subcontractor, to issue a preliminary injunction to prohibit the prime contractor, defendant F. D. Rich Co., Inc., from disbursing funds paid or to be paid to it, by the United States for construction, this court examines critical rights to such relief. Defendants have moved for denial of the preliminary injunction and dismissal of a temporary restraining order presently controlling.

On May 29, 1968 Use plaintiff filed its complaint. The first cause of action pursued the statutory remedy under the Miller Act, 40 U.S.C. § 270a[1] et seq., prayed relief in the form of money judgment for $131,333.91. A second cause of action

---

1. 40 U.S.C. § 270a: Bonds of contractors for public buildings or works; waiver of bonds covering contract performed in foreign country (a) Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as 'contractor': (1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States. (2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. Whenever the total amount payable by the terms of the contract shall be not more than $1,000,000 the said payment bond shall be in a sum of one-half the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $1,000,000 and not more than $5,000,000, the said payment bond shall be in a sum of 40 per centum of the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $5,000,000 the said payment bond shall be in the sum of $2,500,000.

§ 270b: Same; rights of persons furnishing labor or material (a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him; *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States Marshal of the district in which the public improvement is situated is authorized by law to serve summons. (b) Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him. The United States shall not be liable for the payment of any costs or expenses of any such suit. As amended Aug. 4, 1959, Pub.L. 86–135, § 1, 73 Stat. 279.

initiated claim for a lien under Laborers' Lien provisions of the South Carolina Code, particularly S.C. Code 1962 Anno. 45–301 and 45–302:

§ 45–301. Contractors to pay laborers out of money received for contract; laborers' lien on contract price.—Any contractor in the erection, alteration or repairing of buildings in this State shall pay all laborers, subcontractors and materialmen for their lawful services and materials furnished out of the money received for the erection, alteration or repairs of building upon which such laborers, subcontractors and materialmen are employed or interested and such laborers, as well as all subcontractors and persons who shall furnish material for any such building, shall have a first lien on the money received by such contractor for the erection, alteration or repair of such building in proportion to the amount of their respective claims. Nothing herein contained shall make the owner of the building responsible in any way and nothing contained in this section shall be construed to prevent any contractor or subcontractor from borrowing money on any such contract.

§ 45–302. Same; penalty for failure so to do.—Any contractor or subcontractor who shall, for other purposes than paying the money loaned upon such contract, expend and on that account fail to pay to any laborer, subcontractor or materialman out of the money received as provided in § 45–301 shall be guilty of a misdemeanor and, upon conviction, when the consideration for such work and material shall exceed the value of one hundred dollars shall be fined not less than one hundred dollars nor more than five hundred dollars or imprisoned not less than three months nor more than twelve months

and when such consideration shall not exceed the value of one hundred dollars shall be fined not more than one hundred dollars or imprisoned not longer than thirty days.

The relief sought under this cause of action is (a) enforcement of plaintiff's alleged lien upon funds of the principal contractor in the hands of the United States, (b) all funds on hand or hereafter received by and of Rich in South Carolina (c) for a temporary restraining order prohibiting disposal of either funds, and (d) for an injunction *pendente lite* against such disposal. Upon the verified complaint, and attached exhibits of (1) the contract between the use plaintiff (hereinafter called Brown) and defendant F. D. Rich Co., Inc. (hereinafter called Rich), (2) a summary of the work Brown allegedly performed, this court issued its temporary restraining order prohibiting any of defendants from spending or disposal of any funds applicable and ruled defendants to show cause why an injunction *pendente lite* should not issue.[2] Defendants in due time filed returns to the rule, answered and moved to vacate the temporary restraining order. They joined in emphatic denial that use plaintiff is entitled to the collateral of injunctive relief. A hearing on the rule precipitated this decision.

Initially, defendants insist that the inclusion of the second cause is improper and that the Miller Act[3] effectively preempts relief under such statutes as the South Carolina lien statutes.[4] Defendants further argue that the use plaintiff is not entitled to equitable relief because of an adequate remedy at law.

■ The Miller Act was intended to protect, provide for, those who furnish labor and materials for *government construction* as distinguished from private construction. The United States Fourth

2. Counsel for use plaintiff tendered bond in amount of $10,000.00, was advised to await this decision before filing same.

3. Note 1, supra.

4. Reference was made in arguments to South Carolina Statutes on Mechanic liens, Chapter 5, Title 45, S.C.Code 1962 Anno. No issue was specifically made thereabout.

Circuit Court of Appeals has so ruled in United States for Use of Gibson v. Harman, 192 F.2d 999, 1000 (4th Cir. 1951):

> The act, like its predecessor, the Hurd Act, was intended to provide for those who furnish labor and materials for government construction protection analogous to that afforded by mechanics' and material furnishers' liens in the case of private construction; and no one would suggest that such liens cover damages on account of personal injuries sustained by laborers or awards for compensation under workmen's compensation acts.

Public contractors are required by the Miller Act to furnish two separate bonds, one a "performance" bond for the protection of the United States, the other a "payment" bond for the protection of "persons supplying labor and material in the prosecution of the work." 40 U.S.C.A. § 270a. That the payment bond thus required was intended merely to provide for payment of claims for labor and materials that such persons may furnish, and not for the payment of other claims that may arise in their behalf, would seem to be clear enough from the language of the section of the statute requiring the bond to be given; but, if there could be any doubt as to this, it is removed when other provisions of the statute are considered. Thus 40 U.S.C.A. § 270b(a), which gives the right to sue on the bond, provides: "(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: * * *."

More recently, in ruling that the subcontractor is not a party to the government contract and is obligated only to perform its contract with the prime contractor without fault the Fourth Circuit Court has held:

> Having properly performed and having had its work inspected and approved by both the prime contractor and the Government, the subcontractor was entitled to collect his money and go about his business. By the terms of the contract he was entitled to his pay 'on demand for his work or materials as far as executed and fixed in place, less the retained percentage, at the time the certificate should issue, even though the Architect fails to issue it for any cause not the fault of the Subcontractor.' Here the certificate had issued. *If the subcontractor is not paid, his only remedy is a suit under the Miller Act.* He has no lien and no claim against the Government. This is the reason for the Act * * *.[5]

Having found explicit guidance in the opinions of the Fourth Circuit, this court needs no additional authority. Of interest however is the language in Continental Casualty Co. v. United States, 305 F.2d 794, 796 (8th Cir. 1962) cert. denied 371 U.S. 922, 83 S.Ct. 290, 9 L.Ed.2d 231.

As is well known, the Miller Act, adopted in 1935, has for its purpose the protection of those who supply labor or materials for use in Government construction. Fanderlik-Locke Co. v. United States for Use of Morgan, 10 Cir., 285 F.2d 939; United States for Use and Benefit of Hopper Brothers Quarries v. Peerless Casualty Co., 8 Cir., 255 F.2d 137; St. Paul-Mercury Indemnity Co. v. United States for Use of Jones, 10 Cir., 238 F.2d 917. The Act, which is to be construed liberally,

---

5. United States for Use of B's Co. v. Cleveland Electric Co., 373 F.2d 585, 588 (4th Cir. 1967).

is designed to give such suppliers the same protection that State lien laws give ordinarily to persons furnishing labor and materials for use in private construction; and since the property of the United States is not subject generally to State lien laws, the bond protection of the Miller Act is in lieu of the liens provided by State law. United States for Use and Benefit of Munroe-Langstroth, Inc., v. Praught, 1 Cir., 270 F.2d 235; United States for Use of Gibson v. Harmon, 4 Cir., 192 F. 2d 999; United States to Use of Acme Furnace Fitting Co. v. Ft. George G. Meade Defense Housing Corporation, D.C.Md., 186 F.Supp. 639; United States for use of James F. O'Neil Co. v. Malan Construction Corp., E.D. Tenn., 168 F.Supp. 255.

■ Returning to the case at bar, this court finds that the Miller Act does pre-empt remedies under state laws or lien statutes where a United States Government contract involves claims for workmanship and materials furnished. The facts admit of no other conclusion here.

It is clear that in this case the use plaintiff has an adequate remedy at law against Rich and its sureties under the Miller Act. In fact the two and one-half million dollar bond of the sureties alone is more than adequate to protect the use plaintiff.

Plaintiff's action is one at law for money damages. In American Auto Insurance Co. v. United States for Use and Benefit of Luce, 269 F.2d 406 (1 Cir. 1959) the Court stated that "The Miller Act implements a congressional policy that a bond with surety shall provide protection for persons supplying labor and materials for the construction or improvement of federal property." The plaintiff has instituted this suit under the provisions of the Miller Act, has cited the Miller Act in its complaint, and has made the sureties which the Miller Act requires defendants in the action. Brown, therefore, is bound by those allegations.

Defendants, in oral arguments before the court, pointed out that Article XXI of the contract, attached to the complaint, had an inclusive proviso reading:

The first party may, at any time, if it so desires, make direct payment to the labor employed by the second party and charge the payment against any monies which are due or may become due the second party. The second party for itself and its sub-contractors, material suppliers and employees, *hereby expressly waives the right to file any lien or claim against the premises or money earned by the first party;* and further, that if in violation hereof, there shall be any lien, or other claim for moneys due or to become due for which if established, the first party might be liable, and which would be chargeable to the second party, second party shall immediately satisfy or bond the same, or the first party shall have the right to bond said lien or claim or otherwise discharge the same and to retain out of any payment then due or thereafter to become due, an amount sufficient to completely indemnify it against such lien or other claim with interest together with the expense incident to discharging such lien or claim or defending suit to enforce such lien or other claim, including any premiums charged for a bond and any attorneys' fees and disbursements all of which the second party agrees to pay.

Such language is included, but the presence of the same is not conclusive of any issue here. The court, therefore, undertakes no interpretation of a clause made moot here by decisions quoted.

Next for consideration is whether Brown is entitled to an injunction *pendente lite* or a continuation, in any form, of the present restraining order. The prime contractor has admittedly complied with the *Miller Act* in furnishing sureties. The surety defendants have furnished a bond of Two Million Five Hundred Thousand Dollars which specifically guarantees payment to persons such as plaintiff who have supplied labor and

material to the defendant Rich, and this includes Brown. Defendants' counsel admitted inclusion. The amount of the bond is in excess of the amount of the plaintiff's claim. Plaintiff has failed to show that its legal remedy is inadequate or that it would suffer irreparable harm if an injunction were not issued.

Plaintiff alleges that its monies are being disposed of with the intent to defraud the plaintiff is denied by the defendant Rich. "No court may enjoin conduct which is neither threatened or imminent." Congress of Racial Equality v. Douglas, 318 F.2d 95 (5th Cir. 1963); Virginia Electric & Power Co. v. NLRB, 115 F.2d 414 (4th Cir. 1940) reversed on other grounds, 314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348; Blease v. Safety Transit Co., 50 F.2d 852, 856 (4th Cir. 1931). An injunction may not be issued on the ground that injurious action may possibly be committed, but there must be at least a reasonable probability amounting to more than a mere fear or apprehension that injury will be done if no injunction is granted. First Nat. Bank in Billings v. First Bank Stock Corp., 197 F.Supp. 417 (D.C.Mont.1961); Carroll v. Associated Musicians of Greater New York, 206 F.Supp. 462 (D.C.N.Y.1962) affirmed 2 Cir., 316 F.2d 574. Nor should an injunction be used merely to allay litigant's fears. Dunn v. Decca Records, 120 F. Supp. 1 (D.C.N.Y.1954); Humble Oil & Refining Co. v. Harang, 262 F.Supp. 39 (D.C.La.1966).

It is true that Rich has received from the Government substantially all the money due for Brown's work on the contract. Of approximately $516,000 paid to Rich for the Brown work approximately $200,000 has been paid by Rich to Brown. Brown here claims approximately $132,-000 due, and Rich admits $38,076.84 due Brown unless Brown is responsible for delay and liquidated damages claimed by the Government. This last issue was never before this court in this appearance except by way of illustration. It further appears that Rich has paid out $12,906,-372.16 on the Fort Jackson contract in question, has received $11,850,019.19 from the United States, and that $158,-653.12 is being withheld. Twenty-six claims, aggregating $929,311.82,[6] were or will generate South Carolina lawsuits if not disposed of. Perhaps this information relays its signals that Rich has collected, spent or used, Brown's money. This is an issue, however, that can best be winnowed at a hearing on the merits, where the separation of the wheat from the chaff can be fanned to the point of truth by counsel's tactics and arguments. If the difficulties attendant to financial stress threaten Brown's ability to collect, the sureties are the safeguard. There is no showing the surety defendants are either insolvent or irresponsible.

So long as Brown has the guarantee of solvent bondsmen, Brown has the protection which the Miller Act contemplates. There remains, under present perspective, no reason for this court to issue an injunction *pendente lite* or continue in effect the temporary restraining order. Indeed, the temporary restraining order and rule to show cause have evoked an informative response. The parties are no longer in doubt as to facts and issues. There remains a decision on the issues, mainly concerned with the amount Rich owes Brown.

The motion for injunction *pendente lite* is refused.

The temporary restraining order is vacated.

The parties will proceed to a hearing on the merits.

And it is so ordered.

---

6. Including the present claim and seven others which have been disposed of by settlement.