**Roberto S. YBANEZ, Appellant,**

v.

**ANCHOR CONSTRUCTORS, INC., Appellee.**

**No. 710.**

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 29, 1972.

Rehearing Denied Jan. 24, 1973.

Edwards & DeAnda, Philip Maxwell, Corpus Christi, for appellant.

Keys, Russell, Watson & Seaman, R. Kinnan Golemon, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit for wages by Roberto S. Ybanez (an employee) against Anchor Constructors, Inc., his employer. Ybanez, hereafter called plaintiff, alleged that from December 14, 1967 to January 30, 1970, he worked as an "equipment operator" yet was paid only the wage scale of a "laborer". Plaintiff's suit was for the difference in wages between an equipment operator and laborer for the number of hours worked during that period.

The plaintiff sought recovery from Anchor Constructors, Inc., hereafter called defendant, on two alternate theories of recovery: First, that he was entitled to recover the additional wages as a result of a labor contract which was negotiated between the Associated General Contractors of America, South Texas Chapter (a multiemployer bargaining unit), hereafter called the "AGC", and the Hoisting and Portable Engineers, Local 450, District VI, hereafter called the "union"; or, Second: that he was entitled to recover from the defendant additional wages pursuant to the minimum wage scale used on federal construction projects as required by the Davis-Bacon Act, 40 U.S.C.A. § 276a, et seq. The trial court refused to submit the case to the jury based on the contract (first) theory but did submit the case on the Davis-Bacon Act (second) theory and permitted recovery on the latter.

The jury found that the plaintiff had worked a certain number of hours at a higher skilled position than he had been paid. Based upon the jury findings, the trial court awarded judgment for $2451.80 "in back wages due plaintiff under the terms of the Davis-Bacon Act" plus the stipulated attorney fees. The plaintiff appeals, contending the trial court erred in failing to submit certain special issues which would entitle him to a judgment under the contract (first) theory. The defendant appeals, claiming the trial court lacked jurisdiction to render judgment for any amount if based on the Davis-Bacon Act (second) theory. We will first take up plaintiff's appeal involving the contract (first) theory of recovery.

In March of 1967 the plaintiff started to work for the defendant as a laborer. Approximately 2 or 3 months later he began working as laborer supervisor, supervising 10–20 men. On or about the 15th of December, 1967 he began working with some construction equipment owned by the defendant. The testimony showed that from December 1967 until January 30, 1970, when plaintiff terminated his employment with defendant, he worked in various capacities, at various work sites, on various jobs including 2 federal projects. Plaintiff was a non-union employee until on or about the date he quit work with the defendant at which time he joined the "union" hereinbefore named.

In July of 1967 negotiations were commenced between the AGC and the union to set wages in Corpus Christi, Texas and the surrounding area for operating engineers. The contract was signed on October 26, 1967 for a period extending through December 30, 1970. During the time the contract was being negotiated between AGC and the union, the defendant joined the AGC.

The evidence showed that AGC is a multiemployer bargaining unit. The contract signed covered the wages and conditions of employment of operating engineers in the jurisdiction of the union for the term of the contract. The defendant did not specifically assign its bargaining rights to the AGC upon joining the organization, but subsequently did assign them in an assignment dated February 28, 1969 made expressly effective for the "new contract"

which presumably was to start at the expiration of the prior contract, that is, after September 30, 1970. Although it is undisputed that the defendant did not assign its collective bargaining rights to AGC at the time it became a member of the association or at the time the contract between AGC and the union came into effect, the plaintiff nevertheless contends he is entitled to recover the benefits of such contract between the union and AGC under the doctrine of apparent authority and estoppel.

The plaintiff contends on appeal that the trial court erred in failing to submit to the jury his special issues of "apparent authority" and "estoppel". The trial court held that the plaintiff was not entitled to recover the benefits under the union contract as a matter of law and refused to submit the requested special issues covering plaintiff's theory of recovery under the contract.

■ Generally there are but two ways an employer (such as the defendant) can assign his rights to a multiemployer bargaining unit: (1) either by an unequivocal assignment of bargaining rights, or (2) by a history of collective bargaining on such basis. N. L. R. B. v. Johnson Sheet Metal, Inc., 442 F.2d 1056 (10th Cir. 1971). See also Komatz Construction, Inc. v. N. L. R. B., 458 F.2d 317 (8th Cir. 1972). There is no evidence of either in the instant case.

The plaintiff, however, contends that under the doctrine of "apparent authority" the union was authorized to believe that AGC had the apparent authority to bargain on behalf of the defendant. This, plaintiff says, is based on the spoken words of the defendant which caused the union to believe that the defendant had consented to be bound by the union's contract by purporting to represent to the union that the AGC had the authority to act for the defendant. Citing Restatement of the Law 2d, sec. 8, Agencies, 1958, and illustrations (1959).

■ The evidence adduced at the trial concerning the apparent authority and the estoppel theories was disputed. However, for the purpose of determining the sufficiency of the evidence to warrant the submission of the special issues, we must consider only the evidence most favorable to plaintiff's theory. Garza v. Alviar, 395 S. W.2d 821, 824 (Tex.Sup.1965); Whitfill v. Hunt, 387 S.W.2d 653, 654 (Tex.Sup. 1965); Lichtenstein v. Lichtenstein Bldg. Corp., 442 S.W.2d 765 (Tex.Civ.App.— Corpus Christi 1969).

The record in this regard showed that the AGC represented a number of contractors and was a multiemployer bargaining unit and as such was representing various contractor employers in bargaining with the union on certain wage contracts. Mr. H. H. "Hamp" McCool, the business agent for the union, testified that he executed the base contract between the union and AGC under authority given him by the business manager of the union. Witness McCool testified that the union had been negotiating with AGC for 2 or 3 months when the existing contract expired without the two parties having come to an agreement. Thereafter the membership of the union voted to go out on strike and to picket AGC contractors in an attempt to bring about a new contract. From October 1 until October 23, 1967, three days before the contract in question was signed, the union members picketed all of the AGC contractors, including the defendant. During the time that the pickets were up, McCool received a telephone call from Mr. Bob Jenkins, president of the defendant corporation. Jenkins inquired of McCool as to whether or not there was a way to get the pickets removed. McCool replied that the pickets would come down if the defendant would sign a separate interim wage agreement, pending settlement of the contract negotiations between the union and AGC. To this offer Jenkins replied, *"I can't, I have become a member of AGC, and I can only do*

*what they say."* McCool further testified that at no time during the contract negotiations between the union and AGC did anyone ever notify him or his representative that any one of the members of AGC (employing operating engineers) would not be bound by the contract. He also testified that nobody associated with AGC told him that the defendant was to be exempt from the terms of the contract. McCool testified that in his long experience in negotiating this type of contract, he had never heard of the AGC bargaining for a collective agreement with the union and then at that time or later exempting some of its members from the terms of that agreement. At or about the time the contract had been signed between AGC and the union, the pickets were removed from other AGC member contractors as well as from the defendant's job. At no time thereafter did the union attempt to negotiate a separate contract· with defendant. The reasonable inference would be, that the union believed and relied upon Jenkins' statement that he was a member of the AGC and the defendant was bargaining along with the other AGC contractors.

In January of 1970 when the union discovered that the defendant was underpaying the plaintiff, McCool called Jenkins and suggested to him that he call the plaintiff in and sit down and adjust the wages because "when the union has an agreement with a company, we give the workers (either union or non-union) the benefit." McCool suggested that it might be only a bookkeeping error. Jenkins then called the plaintiff into his office and advised him that the defendant company could not afford the union scale and that plaintiff was free to go. Whereupon, plaintiff brought this suit. No one questions that the plaintiff would be a third party beneficiary of the contract in question and would therefore be entitled to assert its term and conditions if the contract as such is enforcible.

The law on apparent authority is aptly set out by our Supreme Court:

"The doctrine of apparent authority is based on estoppel, and one seeking to charge a principal through the apparent authority of an agent to bind the principal must prove such conduct on the part of the principal as would lead a reasonably prudent person, using diligence and discretion, to suppose that the agent has the authority he purports to exercise. . . ." Chastain v. Cooper & Reed, 152 Tex. 322, 257 S.W.2d 422 at 427. Sup.Court.

At the conclusion of the trial, the plaintiff requested five special issues. The trial court refused the issues and held as a matter of law that either the plaintiff had failed to present sufficient evidence to raise the issues or that he had failed to request issues in substantially correct form. We believe that there was some evidence (although disputed) to raise the issues of estoppel and/or apparent authority. However, because of our ultimate holding that the issues were not submitted in substantially correct form, it is necessary that we copy the plaintiff's requested issues in full.

"SPECIAL ISSUE NO. 1′

Do you find from a preponderance of the evidence that Robert Jenkins, the President of Anchor Constructors, Inc., represented to Hamp McCool, the Business Agent for the Operating Engineers Union, prior to October 23, 1967, that Anchor was a member of the Associated General Contractors and therefore had to abide by its decisions?

SPECIAL ISSUE NO. 1(a)

Do you find from a preponderance of the evidence that such representation, if any, was false?

SPECIAL ISSUE NO. 1(b)

Do you find from a preponderance of the evidence that such representation, if any you found, was made with the knowledge that it would be acted upon

by the Hoisting and Portable Engineers Local 450, District VI?

### SPECIAL ISSUE NO. 1(c)

Do you find from a preponderance of the evidence that the Hoisting and Portable Engineers Local 450, District VI relied upon such representation, if any you have found?

### SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that the Operating Engineers relied upon such representation, if any, made by the President of Anchor Constructors, Inc.?"

Our Supreme Court has further stated that:

" ' . . . In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made *must have relied on or acted on it to his prejudice.*' " (Emphasis supplied.) Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 at 932.

The doctrine of apparent authority of an agent is founded upon the law of estoppel. The doctrine does not apply unless the person dealing with the agent was misled by the representation or conduct of the principal. " . . . He must have been actually mislead, and induced to act *to his prejudice,* by reason of the principal's conduct, he having on his part exercised due diligence to ascertain the truth . . ." Insurance Co. of No. America v. Fredonia State Bank 469 S.W.2d 248 (Tex.Civ.App. —Tyler 1971, n. r. e.). (Emphasis supplied). Butterworth v. France, 66 S.W.2d 369 (Tex.Civ.App.—Amarillo 1933); First

Texas Joint Stock Land Bank v. Holloway, 77 S.W.2d 301 (Tex.Civ.App.—Amarillo 1934).

In the case of Bankers Protective Life Ins. Co. v. Addison, 237 S.W.2d 694 (Tex. Civ.App.—Amarillo 1951) the court concluded after citing various authorities:

"From these and other authorities it is clearly seen that there can be no apparent authority of an agent without acts or conduct of some sort on the part of the principal and such acts or conduct of the principal must have been known and relied upon in good faith and as a result of the exercise of reasonable prudence by a third person as claimant and *such must have produced a change of position by claimant to his detriment.*" Bankers Protective Life Ins. Co. v. Addison, 237 S.W.2d 694, 696. (Emphasis supplied.)

The doctrine of apparent authority does not apply if the third person (in this case the union) who, by dealing with the agent (AGC), was not mislead to such an extent that he has been induced to change his position to his detriment. 2 Tex.Jur.2d Agency § 43–46, pp. 481–487.

■ In order to recover under the law of estoppel and/or apparent authority, the plaintiff must finally prove that such acts or conduct: "produced a change of position by claimant to his detriment"; that such acts or conduct induced the plaintiff to "act to his prejudice"; and/or, that "the party to whom it was made must have relied on or acted on it to his prejudice." Bankers Protective Life Ins. Co. v. Addison; Insurance Co. of No. America v. Fredonia State Bank; Gulbenkian v. Penn, all supra. There were no such issues requested by the plaintiff.

■ Rule 279, Texas Rules of Civil Procedure, "Submission of Issues" states in part:

" . . . Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submis-

sion, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; . . ."

This portion of the rule does not mean that the requested issue must be absolutely correct, nor does it mean that a requested issue that is merely sufficient to call the matter to the attention of the court will suffice. The requested issue must be one that, in substance and in the main, is correct and is not affirmatively incorrect. Call of Houston, Inc. v. Mulvey, 343 S.W. 2d 522 (Tex.Civ.App.—Houston 1961); Rule 279, note 29, T.R.C.P.

■ We hold that the plaintiff has failed to request issues in substantially correct form in accordance with the above cited rule that would entitle him to a recovery under the theory he has set forth. There were no issues requested on detrimental reliance or prejudice. The evidence was insufficient to prove that the plaintiff was actually mislead and induced to act to his prejudice as a matter of law. Plaintiff's points of error (as appellant) are overruled.

The defendant Anchor Constructors, Inc., appeals from the trial court's judgment awarding wages and attorney fees to the plaintiff, setting out 16 points of alleged error. Its first point is to the effect that the trial court erred in entertaining a basis for relief under the Davis-Bacon Act because the (state) court had no jurisdiction that subjected the defendant to the Davis-Bacon Act, or jurisdiction to grant the relief sought by the plaintiff under the Act. (Plaintiff's second theory). The defendant contends in its appeal, that plaintiff's rights, if any, to additional wages under the Davis-Bacon Act can only come from the construction contracts on two federal projects, i. e., (1) the Padre Island National Seashore project and (2) the Solomon Coles Junior High School project. The plaintiff's cause of action is based on a claim that he was *misclassified* by the defendant. He does not claim that he was not paid the full wages owed him under the classification of "laborer". Plaintiff states that he should have been paid higher wages for the classification of a heavy equipment operator, mechanic, and driver-oiler. It is the difference between the wages for these classifications and that of a "laborer" for which plaintiff sues. The dispute is not whether the defendant failed to pay him what they agreed to pay, rather the dispute is whether the defendant was improperly classified.

Prior to the time when the defendant company entered into a contract covering the Padre Island National Seashore and the Solomon Coles School, the prevailing wage rate determination for each classification of workers was made by the federal government. These determinations were incorporated into the contract, signed by the defendant, and thereafter became conclusive on the defendant. Plaintiff contended in the trial court that defendant's failure to pay the plaintiff according to the higher classification gave him a cause of action against the defendant under the provisions of 40 U.S.C.A. § 276a–2(b). Citing Gillioz v. Webb, 99 F.2d 585 (5th Cir. 1938). We disagree.

The Davis-Bacon Act guarantees a minimum wage inclusive of fringe benefits to laborers and mechanics who are employed by contractors on federal government contracts of more than $2,000.00 for the construction, alteration or repair of public buildings or public works. The Act requires the Secretary of Labor to determine the prevailing wages in the locality where the work is to be performed for the various classes of laborers and mechanics to be employed on the projects. The wage determination schedules then become a part of the advertising specifications for the contract and ultimately form a part of the executed contract. The contract, based upon these specifications, must stipulate that all mechanics and laborers will be paid according to the wage rates thus determined by the Secretary of Labor. The government may otherwise withhold from

the contractor sufficient monies to pay the mechanics and laborers employed by the contractor, the difference between that minimum rate set by the Federal Government and what they actually receive from the contractor. 40 U.S.C.A. § 276a–2(a). If, however, the amount so withheld is insufficient to reimburse those employees who have been underpaid, such employees *"shall have the right of action* and/or of intervention against the contractor and his sureties conferred by law upon persons furnishing labor or materials, and in such proceedings it shall be no defense that such laborers and mechanics accepted or agreed to accept less than the required rate of wages or voluntarily made refunds." 40 U.S.C.A. § 276a–2(b) (emphasis supplied).

The Act further provides that if the contracting officer finds that any laborer or mechanic is being paid a rate of wages ". . . less than the rate of wages required by the contract to be paid . . .", the Comptroller General of the United States shall pay directly to laborers and mechanics, from any accrued payments withheld under such contract, any wages found to be due laborers and mechanics pursuant to the Act. The Comptroller General is directed to maintain and distribute to all government departments a list of all contractors found disregarding their obligations under the Act. No contract can be awarded a person on the list for 3 years after first being placed on the list. This is known as a "debarment" provision.

The Supreme Court of the United States has interpreted the Davis-Bacon Act in this language:

"The language of the Act and its legislative history plainly show that it was not enacted to benefit contractors, but rather *to protect their employees from substandard earnings by fixing a floor under wages on Government projects.* (citing cases and legislation in a footnote). Congress sought to accomplish this result by directing the Secretary of Labor to determine, on the basis of prevailing rates in the locality, the appropriate minimum wages for each project . . . On its face, the Act is a minimum wage law designed for the benefit of construction workers. The Act does not authorize or contemplate any assurance to a successful bidder that the specified minima will in fact be the prevailing rates. Indeed, its requirements that the contractor pay 'not less' than the specified minima presupposes the possibility that the contractor may have to pay higher rates." (Emphasis added). United States v. Binghamton Const. Co., 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594 (1954).

The plaintiff contends that the portion of the Act which says "such laborers and mechanics *shall have the right of action* . . ." (40 U.S.C.A. Sec. 276a–2(b) supra,), coupled with the fact that the state district courts of Texas are courts of general jurisdiction, and are therefore competent to hear federal causes of action, vests in the Texas state courts jurisdiction to consider plaintiff's suit for the difference in wages due him because of the alleged misclassifications. On the other hand the defendant contends that jurisdiction over a laborer's dispute with a contractor for wages under the Davis-Bacon Act lies exclusively within the federal realm. In this regard, the defendant argues three basic reasons why the State courts lack jurisdiction to consider plaintiff's claim. First, there is no jurisdiction under the Davis-Bacon Act to determine misclassification disputes of an employee in a state court as the act concerns itself primarily with a minimum wage scale as a floor; second, even if plaintiff had a cause of action in some court, the plaintiff has failed to exhaust his administrative remedies which are conditions precedent to bringing suit in any court (State or Federal); and third, any such court action, if properly brought, must be based under the "Miller Act" and, correspondingly, must be brought in a federal district court.

Taking up the first reason, we believe that an action based on the Davis-Bacon Act is not proper in a state court (or in any court, for that matter), for a determination of the amount of wages due on the reclassification of a laborer or mechanic after the contract is completed. In an Arkansas state case with similar facts, the Supreme Court of Arkansas held that the Davis-Bacon Act and the regulations under it set out the full relief that an aggrieved laborer was entitled to. The court held that state courts are without jurisdiction to consider such claims. Davis v. Hardaway Contracting Co., 239 Ark. 1, 386 S.W.2d 707 (Sup.Ct.Ark.1965). Although the Arkansas court held that a certain provision of the Davis-Bacon Act provides that the Secretary of Labor was to determine misclassification cases, a reading of the various applicable sections of the Act convinces us that they concern themselves with setting up the various classes and their respective minimum wage rates under a specific federal contract. The Act sets out procedures in case there is a dispute as to whether a job is properly classified before the employee is hired and the work is started. We do not believe that the intent of the Act, or the regulations thereunder, are to provide a cause of action in a state or federal court for settling local matters concerning classifications after the job has been completed. In any event, the Arkansas state court held that a state court does not have jurisdiction to hear such disputes.

In one federal case concerning misclassification of personnel, recovery was allowed under the Miller Act, 40 U.S.C.A. § 270a et seq, where the contract was covered by the Davis-Bacon Act. The contractor pleaded that the Secretary of Labor had the authority to decide such cases. The court held:

"The function of the Secretary in thus ascertaining and declaring the prevailing rate of wages is not arbitrational, and in the nature of a judicial inquiry, and therefore requiring for its validity a formal controversy and hearing. *It is that of an appraiser or valuer,* a part of the process fixed by contract for determining a price, or an amount to be paid. (citing cases) . . . The only difference between the function of the Secretary under the Act as originally drawn and under the Act as amended, is that under the original Act the Secretary, as here, fixes the rate to be paid after a dispute has arisen and it then becomes part of the contract, while under the Act as amended the Secretary fixes and writes it into the contract in advance." (Emphasis added.) Gillioz v. Webb, 99 F.2d 585 (5th Cir. 1938).

We hold that a state court does not have jurisdiction to hear misclassification disputes under the Davis-Bacon Act.

There is a second reason why the state court does not have jurisdiction of this wage dispute. The statute, by its terms and its language, provide for three steps before a suit is properly brought: 1) There must be a finding by the contracting officer that the aggrieved laborer was paid below the established minimum wage rate; 2) the Comptroller General must withhold accrued payments due the contractor; and 3) the Comptroller General must have paid to the laborers all of such withheld accrued payments thereby making a lawsuit necessary. The record does not reveal that the 3 steps were taken.

Specifically, the regulations vest in the contracting officer the power to require additions of classifications of workers on the job and re-classifications which he deems warranted.[1] The Secretary of Labor makes the final determination in case of disputes over classification and re-classification. Under Sec. 5.5(a)(2) and Sec.

---

1. Title 29, Code of Federal Regulations (C.F.R.), Subtitle A, Office of the Secretary of Labor, Part 5—Labor Standards Provisions Applicable to Contracts covering Federal Financed and Assisted Construction, Subpart A—General, Sections 5.0 to 5.14.

5.9 the involved federal agency can suspend and withhold payments due the contractor to insure full payments due workers until the contractor ceases committing wage payment violations and until he pays the affected worker. Sec. 5.5(a)(3)(ii) requires the contractor to submit weekly payrolls accompanied by a statement representing that the payroll is correct; that wages paid are not less than the minimum wage as determined and stating: ". . . that the classification set forth for each laborer or mechanic conform with the work he performed."

If the violations are found non-willful, the agency can demand restitution in order to pay the wages. Sec. 5.10(a). But if the violations are found to be willful and in violation of a criminal nature, the agency must forward the matter to the Attorney General. Sec. 5.10(b).

In Sec. 5.11(b) provision is made for hearings before a Department of Labor Hearing Examiner where the dispute concerns proper classification as well as payment of prevailing wage rates. Provision is made for appeal from the examiner's decision to the Solicitor of Labor, and from there to the Wage Appeal Board.

Full payment of minimum wages to laborers and mechanics must be accomplished by enforcement of the Act's administrative procedures. There is no evidence in the record that the plaintiff attempted to utilize any of the administrative remedies available to him and no evidence that he exhausted these administrative remedies prior to the filing of this suit based on the Davis-Bacon Act. Plaintiff did not comply with administrative procedures prior to the filing of his suit.

■ ■ The third reason that the state court does not have jurisdiction of this wage dispute under the Davis-Bacon Act is because any right of court action to which the Davis-Bacon Act refers, is that conferred by law upon laborers and mechanics against the contractor and his sureties under the Miller Act. (40 U.S.C.A. §§ 270a et seq.). The Davis-Bacon Act provides "such laborers and mechanics shall have the right of action and/or of intervention against the contractor and his sureties conferred by law upon persons furnishing labor or materials." 40 U.S.C.A. § 276a–2(b). The Miller Act is wholly concerned with this right of action. The basic reason for the remedies under the Miller Act, is, because private citizens cannot acquire liens on public property. The remedy of the laborer or mechanic is on the contractor's payment bond. Barrett v. United States, 177 Ct.Cl. 380, 367 F.2d 834 (Ct.Cl.1966); United Pacific Insurance Company v. United States, 162 Ct.Cl. 361, 319 F.2d 893 (Ct.Cl.1963); United States For the Use of Brown Brothers Grading Co. v. F. D. Rich Co., 285 F.Supp. 572 (D.C. S.Car., 1968); United States For the Use of B's Company v. Cleveland Electric Co. of South Carolina, 373 F.2d 585 (4th Cir., 1967). Plaintiff's contention, that if the suit under the Davis-Bacon Act is not brought on the bond it may be brought in a state court, is without merit. Willis v. E. I. Du Pont de Nemours & Co., 76 F.Supp. 1010 (E.D.Okla.1948), reversed on other grounds 171 F.2d 51 (10th Cir. 1948).

Defendant cites a number of out of state court opinions in which other states have held that they have no jurisdiction of wage disputes based on the Davis-Bacon Act. Davis v. Hardaway Contracting Co., supra; Kelly v. Grimshaw, 161 Kan. 253, 167 P.2d 627, 163 A.L.R. 1290 (1946); and A. W. Kutsche & Co. v. Anderson, 169 Tenn. 98, 83 S.W.2d 243 (Tenn.1935), and Northern States Contracting Co. v. Swope, 271 Ky. 140, 111 S.W.2d 610 (Ct.App., Ky. 1937). There have been no Texas cases cited to us that have construed the problem presented here. However, it is significant that plaintiff has failed to cite a single state court opinion from any state which has held that a state court had jurisdiction over a similar controversy to the one before us. Plaintiff has also failed to cite a single federal court decision holding that a state court has jurisdiction under the Act.

We, therefore, hold that the trial court lacked jurisdiction to hear this cause based on the Davis-Bacon Act. The Act was not designed to arbitrate disputes on misclassifications after the contract had been completed and the state courts have no jurisdiction to proceed thereunder. Second, we hold that the plaintiff has failed to pursue his appropriate administrative remedy before proceeding in any court. Finally, we hold that if all the prerequisites to suit had been met by the plaintiff, his proper remedy would have been to have brought suit in federal court under the Miller Act.

The judgment of the trial court is reversed and judgment is rendered that plaintiff take nothing.